Powell v. Spaulding.

mony, the court did not err in deciding that the title was out of the plaintiff.

Judgment affirmed.

*Reeves & Miller*, for plaintiff in error.

*D. Rorer* and *H. T. Reid*, for defendant.

————•'●●'————

POWELL *et al. v.* SPAULDING *et al.*

Where there is unity of interest, as to the object to be attained by a bill in equity, the parties seeking redress may join in the same complaint.

Where the land of an intestate is in charge of an administrator, he may be made a joint party to a bill in chancery in relation to that land, the same as the real party in interest.

A bill is not multifarious where all the parties are interested in the same claim of right, and where the relief sought is of the same general character.

Where the exhibits referred to in a bill are matters of public record, they need not be filed in court.

A bill has equity, which seeks to set aside a judgment of partition on the ground of fraud, and alleges the fraud generally; and also specially charges the facts and circumstances of fraud, under which the complainants were wronged by the confederation of the parties, their agents and attorneys, and where those facts and circumstances shew not only actual but constructive fraud.

If any of the charges of fraud in a bill would be good at law, and such as would justify relief or discovery, a demurrer to the whole bill cannot be sustained.

Where a bill charges that cunning, deception, falsehood and artifice were used to circumvent, cheat and defraud complainants of their rights, in a judgment of partition, and charges that defendants practiced fraud and imposition upon the the court to procure such judgment, and where the charges indicate actual fraud in the judgment, a demurrer to the bill should not be sustained.

Where an attorney confesses judgment against a party, without authority, the party injured is entitled to relief in equity on the ground of fraud.

APPEAL *from Lee District Court.*

*Opinion by* WILLIAMS, C. J.   Peter Powell and others, heirs, &c., by their next friend, Joseph Webster, filed their bill to October term, 1847, against Josiah Spaulding and others, in the district court of Lee county.   The bill sets forth the several interests of the complainants, alleging that they are seized in fee as tenants in common, with a number of other persons mentioned in the bill, as far as known of all that tract of land known as, and commonly called, " the Sac and Fox Half Breed Reservation," situate in said county of Lee, lying immediately between the Mississippi and Des Moines rivers, and bounded on the north by a line commencing at the north-west corner of the state of Missouri, and running east to the Mississippi river.   That by virtue of a treaty entered into August the 4th, 1824, between the United States and the Sac and Fox Indians, said tract of land was given to, and reserved for the use of the Half Breeds of the said Indians, who were to hold the same, and occupy it, subject to the same limitations and restrictions by which Indian lands were in general held; that by an act of congress, approved June 30th, 1834, the reversionary interest of the United States, in said land, was relinquished to, and became vested in said Half Breeds, with the right to dispose of the same by sale, devise or descent, according to the laws of the state of Missouri.   The bill also shows that Peter Powell, and the other complainants, at the time of the making of the partition of said Half Breed lands and the rendition of the judgment thereon, as well as before that time, were the owners in fee of shares, or parts of shares, in said lands, by purchase from the Half Breed Indians, which titles are set forth particularly with the names of the grantors, the dates of the conveyances, and the Half Breed Indians from

Powell *v.* Spaulding.

whom the several titles were derived; that the several deeds of conveyance, at the time of their several dates, or about the same, were duly recorded, except the deed from Samuel Brierly to Asa Gruell and Robert Gruell, remained unrecorded. The truth of the facts alleged is averred, and by reason thereof, the several plaintiffs claim legal and equitable right to the portions of said land, as stated by them respectively. After thus stating their several interests in the land, they proceed to charge that Josiah Spaulding, and others named in the bill as defendants, on the 14th of April, 1840, by and in the name of "Reid & Johnston," filed in the clerk's office of the district court, in and for the county of Lee, a petition, wherein they represent themselves as being seized in the aggregate in fee simple of 23¼ full shares in the reservation or tract of land aforesaid; together with 5135 undivided acres of said tract, and one full share and one-sixth of a share in Keokuk, a village situate on said tract. It is also represented in said petition for partition, for that Euphrosine Antaya, and others named therein, and also other persons, whose names and residences were unknown to petitioners, were tenants in common with them in the said reserved tract of land. The petition concludes with a prayer for the partition or sale of the land, as justice or equity might require; that said petition for partition was filed in the district court of Lee county, on the 4th day of April, 1840, and a summons issued in behalf of said Spaulding and others, complainants. against said Antaya, and others, defendants, as named in said petition, requiring them to appear before said court on the 4th Monday of April, ensuing the date of the summons, to answer the petition, which summons was returned into the office of the clerk on or about the 16th of April, 1840, with the certificate that the defendant had not been found. Thereupon, a continuance, with an order of publication, was entered on the motion of the attorneys of complainants, and notice of the proceeding published in the newspapers of Burlington,

in Des Moines county, requiring the defendants, Antaya, and others, as well as all persons interested, to appear and answer the said petition in said district court, on the first Monday of October, 1840; that it did not appear that there was any publication of the notice in the county of Lee.

At April term of the court, 1841, several persons, who had not been made parties to the proceeding in partition, appeared and were admitted as defendants to the bill, and filed their answers. On the 8th day of May, 1841, being April term of said court, a decree—or judgment, as termed by the statute—was entered on the record of the court, for the partition of the land, wherein, among other matters, the following appears as a part of the decree:

"The said defendants having appeared by their counsel respectively, and filed their answers to the petition and stated and produced their respective claims, and exhibited their proofs of title, and in some cases the original conveyances, in others authentic copies of conveyances by which the same are held, and their said respective claims, and those of the petitioners by their counsels respectively being by consent submitted to the court for adjudication, and partition according to law; and the court being satisfied by sufficient proof that the publication required by an act entitled, 'An act to provide for the partition of real property,' has been duly made; and no other person known or unknown having appeared, and answered, the said petition, or produced, or made any claim or other objection to said partition; and the claims of the said parties now before the court, petitioners and defendants, and their respective proofs and conveyances being by the court heard and considered, it is therefore by the consideration of the court, and with the consent of said parties, this 8th day of May, 1841, ordered and adjudged that the claims and rights of said parties respectively to the undivided portion of the land mentioned and described in the said petition, amount in the whole to the number of one

hundred and one equal portions." The bill then proceeds and sets forth the names of these persons, parties to the proceeding in partition, to whom the land was apportioned by the decree, and the portions set off to each. After confirming the apportionment as made, it was further ordered and adjudged " that all other persons, whatever, should be thereafter barred and precluded from any title or claim in said lands."

Commissioners were appointed to divide the lands in compliance with the decree of the court, and make report of their acts for confirmation. At a subsequent term, on the 6th day of October, 1841, the commissioners made their report, which was confirmed. At the same time, a mistake having been discovered as to the number of shares into which the land had by the court been divided, a correction was made so as to decree that instead of one hundred and one, the number should be one hundred and two shares and one third of a share.

The bill then prays that the decree or judgment of the court together with the agreements, doings, &c., of the parties in relation thereto, and all proceedings thereon, "may be taken and considered as a part of this bill." It then charges that "the said proceedings and decree hereinbefore set forth by your orators, &c., are so tainted with fraud, irregularity, injustice and oppression as to render the same void, and of no force and effect, either in law or in equity." In support of this allegation of "fraud, irregularity, injustice and oppression," twenty-nine specifications of facts and circumstances are made. It is also charged that certain lands lying north of said Half Breed reservation, as the boundaries of said reservation were fixed by the treaty of 1824, and were, by the decree, given to the parties admitted to the benefit thereof, whereas said last mentioned land by an act of congress, approved June 15th, 1844, had been by the force and effect of said act added to said Half Breed reservation as new territory; and by

including said land in the decree, the court acted without jurisdiction thereof, and the same operated as a fraud upon the rights of the orators, &c.; that for this the decree is void.

The bill then proceeds with a statement that Isaac Galland and others have claims of interest in the land which were not included in the partition as made, and prays that they may be made parties defendant to this proceeding, as their interests are liable to be affected thereby. It also avers that most of the last named defendants to this bill reside in Lee county, and some of them, on the aforesaid Half Breed reservation or tract of land, farming and cultivating the same, whose claims and interests were known to the parties in said decree for partition at the date of the rendition of the same, yet their rights were not recognized, nor were their shares admitted in said decree. That several of the last named defendants having received notice of the pendency of said suit for partition, attended said April Term, 1841, of said district court, for the purpose of filing their respective answers in said suit, but were prevented from doing so, by being imposed upon, and misled by the false and fraudulent representations of the said parties in said decree, their agents and attorneys, or some of them, who falsely and fraudulently told them that no proceedings would be had in said suit at the said April term of said court, 1841."

The bill concludes as follows: "Nevertheless, so it is that said defendant to this bill who were admitted and had interests given them in said decrees of partition and confirmation, well knowing the premises aforesaid, but confederating and contriving how to injure, harrass and oppress your orators, &c., in the premises, and wholly to impoverish and ruin them, now pretend that the rights of your orators and oratrixes as tenants in common, or as owning any interests whatever in said lands, are barred and precluded forever by the decrees aforesaid;" and that

Powell *v.* Spaulding.

said defendants in the furtherance of their said fraudulent designs against your orators and oratrixes, also threaten to commence action at law against such of your orators, &c., as reside on said tract of land, for the purpose of turning them out of the possession and enjoyment of their said homes, all of which is contrary to equity, &c.

The prayer is that as the petitioners are without remedy at law, that the decrees so obtained and made may be declared fraudulent and void, that it be held for nought, that the rights and interests of the petitioners may be secured to them, as though no such decrees of partition and confirmation had ever been made. The usual and general prayer for relief is added.

The first special allegation of fraud is that the full interest of Isadore Antaya, a Half Breed of the Sac and Fox Indians, was admitted, allowed and given, by said decree of partition, to Patrick Walsh and Etienne Provost, notwithstanding said Walsh and Provost, and all the other parties in said decree, and their counsel, well knew that the date of the deed and purchase of said Antaya, under which said Walsh and Provost claimed said interest, was long subsequent in date of execution and delivery, and of the recording of the deed from said Antaya to said Duffield and Morrison, under which your orators and oratrixes, James, Mary, Ann, Sarah, Virginia and Philena Campbell, derived a portion of their interests in said land as is hereinbefore set forth.

Secondly. It is specially charged that two-thirds of the interest of Lizette Gerard, a Half Breed of the Sac and Fox Indians, is given by the decree to Greene Erskine, under a purchase from said Gerard, which was made long subsequent to the purchase of William C. Duffield and one Culbertson from said Gerard, under which said orators and oratrixes, James, Mary, Ann, Sarah, Virginia and Philena Campbell derive a portion of their interest in said land, as hereinbefore set forth.

29

Thirdly. That one-quarter of the share of Mary St. Amont, a Half Breed of the Sac and Fox Indians, as hereinbefore set forth, is admitted and given in said decree to William Overall, while the right of your orator, James May, to one-half of said share, as is hereinbefore shown, is not allowed, but is, in the language of said decree, " barred and precluded forever."

Fourth. That the interest of Therese St. Andre, a Half Breed of the Sac and Fox Indians, as hereinbefore stated, is the same interest under claim of which James L. Burtis, in his answer in the suit for partition, as aforesaid, derived his title, and was under such claim and title derived and given in the said decree one full share; whereas, your orator, James McMurray, who had a deed for a portion of the same share prior in legal and equitable right to that of the said Burtis—which was well known to said Burtis and the other parties in said decree—is nevertheless not mentioned in said decree, nor are his rights reserved.

Fifth. That said decree gives to John Wright one-quarter of a share which he claims to derive, by purchase, from one Isaac R. Campbell, who purchased of Charles Menard and Francois, his wife, said Francois being a Half Breed of the Sac and Fox Indians, as before mentioned, whilst the interest of your orators and oratrixes, the heirs of Abner Chalfant, deceased, who own one undivided one-fourth of the same share, as before mentioned, is not recognized nor allowed in said decree, to any or either of the persons in whose hands said interest was vested, at the date of the said decree

Sixth. That at the time of the filing of the petition for partition, as aforesaid, your orators, Asa and Robert Gruell, Luther Barber and the heirs of Reuben S. Campbell, deceased, as aforesaid, were all living in said county of Lee, and on said Half Breed tract. That said Asa and Robert Gruell and Luther Barber had erected dwellings in which they resided, and made other and valuable improvements

Powell *v.* Spaulding.

on said lands, at and before the commencement of the suit for partition, as aforesaid, under the expectation and belief that the notoriety of their respective interests and possessions, would protect, at all times, against the intrigues and machinations of speculators, and it is especially charged that the share and possessing rights of said Asa and Robert Gruell, Luther Barber, and the heirs of said Reuben S. Campbell, deceased, were well known to said Edward Johnston at the time of verifying and filing in said court said petition for partition. Yet were not the said Asa and Robert Gruell, Luther Barber, and the heirs of Reuben S. Campbell, deceased, named in said petition, nor were their rights regarded in the rendition of said decree of partition.

Seventh. That your orator, James May, at the time of the rendition of the decree of partition and confirmation, resided in Pennsylvania, where he still resides; that it was not until within the course of the year 1845, that he was informed of the proceedings in partition in reference to said lands, as aforesaid; that at the time of the making of said decree, and previously, said May had a portion of said land immediately adjoining Keokuk under cultivation, with a dwelling house and other valuable improvements thereon, which was well known to the parties in said petition, or some of them. That Mary St. Amont, a Half Breed of the Sac and Fox Indians, as hereinbefore shown, and generally known to be such, as well to the said Edward Johnson, as to the community generally, and under whom said May derives his said half share or interest in said lands, resided on said lands at, and long before the rendition of said decree of partition, which, with the consideration that his deed from said Mary St. Amont was recorded in the county of Lee, before the commencement of said suit for partition, induced said May to believe that nothing would be done in reference to said lands affecting his interests, unless he were first notified thereof, or if anything were done, that his interest would be recognized and protected.

Eighth. That your orator, Peter Powell, at and prior to the time of the rendition of the decree of partition, resided in the city of St. Louis, in the State of Missouri, but had no information of the pendency of said suit for the partition of the said tract of land, although a large number of those who have interests given to them in said decree, are his immediate neighbors, with many of whom he was, whilst the said suit for partition was in progress, in daily intercourse, and all or most of whom knew that he had a good interest and title in the said reservation or tract of land.

Ninth. That your orators and oratrixes, Dennis, Adeline and Joseph DeLaime, at the time of the rendition of said decree of partition, and long before, resided in the state of Illinois, about ten miles from St. Louis, and that the facts of their infancy, at the time of the rendition of said decree of partition, as well as their valid and subsisting interests in said lands, as hereinbefore shown, was then known to all or most of the parties admitted in said decree, their agents and counsel; yet said parties did not regard the rights and interests of said Dennis, Adeline and Joseph, as aforesaid; but by their covinous and deceitful practices misled said court to decree that their rights and interests should be barred and precluded forever.

Tenth. That a large majority of the shares and interests, in quantity and value, which were decreed and admitted in said decrees for partition and confirmation, were spurious, fictitious and fraudulent, and which facts were well known to the parties in said decrees for partition and confirmation, their agents and attorney at and before the time of rendition and recording of said decrees. And your orators, &c., further represent, and so allege the fact to be, that it was notoriously understood at, and long before the date of said decrees, that there were not in the aggregate over fifty full Half Breeds which were interested in said

Powell *v.* Spaulding.

reservation or tract of land, and entitled to be admitted in a decree for the partition thereof.

Eleventh. That the rendition of said decree of partition, in which so many and fraudulent interests were admitted, as aforesaid, was the result of a fraudulent and covinous combination of the parties in said decree, their agents and attorneys, who fraudulently and clandestinely assembled together in the tavern house of one William Wilson, in Fort Madison, on the 6th, 7th and 8th days of May, 1841, and then and there mutually and fraudulently agreed that said Half Breed tract or reservation, should, without regard to the rights of your orators, and of the other persons hereinbefore mentioned, who were unrepresented in said fraudulent proceedings, be divided and partitioned among themselves, in the aggregate amount of one hundred and one equal shares. That the parties in said decree, their agents and attorneys, in furtherance of their said fraudulent intent and designs, also agreed on the number of shares and portions of interests which should be decreed and given to the several persons and parties interested in, and consenting to said fraudulent arrangement; that said parties, in said decree, their agents and attorneys, while they were so fraudulently and clandestinely assembled, as aforesaid, and in furtherance of their said fraudulent intent and designs, prepared a draft of the form of the decree of partition, which they designed to have allowed by said court, in reference to said lands, and appeared in court on the day of the date of the rendition of said decree of partition, being the 8th day of May, 1841, at or about the hour of midnight, and then and there informed said court that the parties then before the said court, either in person or by their agents or attorneys, were the only persons whatsoever, which had, to their knowledge and belief, any share, shares, portions of shares, or other interest in said tract of land; whereby said court, being misled through the fraudulent and false representations of said parties, and supposing

said parties were acting in good faith, and not fraudulently, falsely and covinously, as is hereinbefore shown, did allow and order said decree for partition to be entered on the records of said court without any examination whatever, of the rights of said parties or their evidences of title, as in said decree of partition so prepared by the said parties therein, as aforesaid, is falsely set forth, and so your orators, &c., charge that said court, being so misled and imposed upon by said parties, their agents and counsel in said decree, did not hear, consider and adjudicate upon the respective proofs, claims and conveyances of said parties, as in said decree is fraudulently and falsely set forth.

Twelfth. That as further evidence of the fraud and confederacy of said parties in said decree of partition, your orators, &c., show that Reid and Johnston, attorneys for the complainants in said suit for partition, also appeared at the time of the rendition of said decree, as attorneys and agents for a large number of those who came in as defendants in said decree, as well as for the complainants.

Thirteenth. That the petition filed by said Spaulding and others, as aforesaid, was not verified by the affidavit of any or either of the complainants therein, as the statute, in such case provided, contemplates and requires, and is therefore fraudulent, as regards the rights of your orators, and did not give said court authority to act in the premises.

Fourteenth. That the statement in said petition, that the petitioners therein mentioned did not know the names or places of residence of such others as were interested in said lands, but who were not named in said petition in connection with the defendants therein named, is untrue, and your orators, &c., charge especially that said petitioners, or most of them, together with the said attorney, Edward Johnston, who swore to the truth of said petition, as hereinbefore shown, did know of the names and places of residence of your said orators and oratrixes, and of the respective

interests, or of the names of those under whom several of your orators, &c., claim as aforesaid.

Fifteenth. There was fraud in admitting, in said petition and said decree of partition, that Euphrosine Antaya was a Half Breed of the Sac and Fox Indians, and entitled to a full share in said lands, and yet taking advantage of said Euphrosine Antaya's absence from said court, by refusing and barring her of her said right, unless she should afterwards come in and prove said right by competent testimony.

Sixteenth. That the said parties in said decree acted fraudulently in reserving to themselves the interest of Euphrosine Antaya, and in not leaving her share to her sole disposal, as the statute, in the case of absent defendants and owners in cases of partition, contemplates and requires.

Seventeenth. There was fraud in said decree in not partitioning and dividing that portion of land lying immediately at the head of the rapids of the Mississippi, and included in the patent of said Thomas Reddick, and yet declaring that all persons, not parties to said decree, should be barred and precluded from any right or interest in said undivided premises.

Eighteenth. There was fraud and irregularity committed by the parties in said decree of partition, in not having a guardian *ad litem* appointed for the security and protection of the rights of those of your orators, &c., in said premises, who were infants at the time of the rendition of said decree.

Nineteenth. That many of the parties to said decree appeared as defendants, under the petition of said Spaulding and others, without there being any amended or supplimental petition in the premises, as is hereinbefore more particularly shown.

Twentieth. There was fraud in not making such of your orators, &c., as resided on the Half Breed tract of land,

parties to said petition, and in not noticing or preserving their rights in the decree of partition.

Twenty-first. There was fraud in not making such of your orators, &c., defendants to said petition of said Spaulding and others, and in not regarding their rights as owners of undivided interests in said lands in said decree of partition, whose deeds were recorded in said counties of Lee and Des Moines.

Twenty-second. There was fraud in the rendition of said decree of partition, in admitting and allowing portions of shares, and not reserving the balance of said shares for your orators who owned them, as is hereinbefore shown, or leaving the parts undisposed of, as in common for unknown owners.

Twenty-third. There was fraud in your orators, &c., not being made defendants in said suit for partition, their interests being known to the complainants in said partition, and and to all, or most of the parties, admitted in said decree of partition.

Twenty-fourth. That the quarter of a share admitted in said decree to said John Wright, and the full share admitted in said decree to Elizabeth De Louis, formerly Elizabeth Hunt, was admitted therein without their knowledge or consent; and that they did not employ said Reid and Johnston, as is falsely set forth on the record, to appear in court for them, or for either of them, as their respective attorneys for the support of their several rights; but that said Reid and Johnston, of their own accord, and by and with the consent and arrangement of the other parties in said decree, voluntarily appeared for said Wright and Hunt, for the purpose of inducing them to be quiet and submit to the gross fraud and villainies which said decrees perpetrated on the share-holders not admitted therein.

Twenty-fifth. There was fraud in not making your orators, &c., and other persons defendants or parties to said suit for partition, when it was known to the attorneys for the

complainants in said suit that they had valid and subsisting interests in said lands, or at least had deeds for the same.

Twenty-sixth. The court in the rendition of said decree of partition had no authority or jurisdiction to exempt specially from partition that portion of the Half Breed tract included within the patent issued to said Thomas F. Reddick, and therefore the portion of the tract included in the said patent remains in common to all the owners of the said reservation, and said decree, so far as it attempts to bar and preclude your orators from any right or interest in said exempted premises, operates as a fraud upon your orators and oratrixes, and is void.

Twenty-seventh. That at, and previous to the rendition of said decree of partition, and all of the parties admitted therein, as well as their respective attorneys, did know of the rights of your orators and oratrixes, Mary, Ann, Sarah and Philena Campbell, and Dennis, Adeline and Joseph DeLaime, as is herein before set forth, and that they were infants, without guardians, to protect their several shares and rights.

Twenty-eighth. That said parties in said decree of partition and their respective attorneys at the date of the rendition thereof, did know of the rights of all your orators, &c., as is hereinbefore set forth, and yet fraudulently concealed their respective rights from the knowledge of the court.

Twenty-ninth. That the petition and answers in said suit of said Spaulding and others show in many instances that said complainants and defendants therein claim under deed by virtue of antagonistical purchases from the said Half Breeds, and they are allowed in the decree of partition their interests thus adversely held and obtained.

This being the substance of the bill of the plaintiffs as originally filed in the suit. It was afterwards amended on leave given. The amended bill among other matters charged fraud upon the parties to a suit which had been commenced between the said parties to the decree of

D*

partition of said Half Breed tract of land and other persons than the complainants in this proceeding, who claimed to be *bona fide* owners of shares or interests in the land, and who had not been admitted as participants in the benefits of the said decree, which suit was instituted by a bill in chancery, impeaching said decree for fraud, which was removed by a change of venue for trial to the district court of Muscatine county, and which was compromised and settled without final trial by the parties to the record thereof. The amended bill charges that said compromise and settlement was fraudulent and operated to the prejudice and injury of the rights and interests of the parties complainant in this suit, that said compromise was entered into and made without the knowledge of complainants. A multiplicity of exhibits, deeds, &c., are filed in the case as parts of the bill as evidence of the verity of the allegations thereof.

The defendants filed their demurrer to complainants bill and assign the following as causes of demurrer :

1st. The bill contains no equity to warrant any decree.

2d. The exhibits referred to are not filed.

3d. The bill shows that the complainants are barred by the decree of partition, and no sufficient ground of fraud is alleged.

4th. Fraud is generally charged, but the facts set out do not warrant the allegation.

5th. The Bill does not show that complainants have been defrauded.

6th. There is a misjoinder of the parties complainants.

The demurrer was sustained by the court below and judgment entered thereon, from which complainants appealed to this court.

This case is, in its general features, assimilated to the case of Wright impleaded with *DeLouis* v. *Meek et al.*,

tried in this court at December Term, 1849.* The bill seeks to impeach the same decree of partition on the ground of fraud. The principal facts upon which fraud is alleged are the same, and the pleadings in the court below in both cases are quite identical in substance and effect. The cases were both disposed of by judgment on demurrer, dismissing the bills for want of equity and other defects as alleged on trial by defendant's counsel. In this case as in the former the demurrer is in effect both general and special. On trial upon the appeal in this court, this cause was fully and ably argued, and much was urged upon the consideration of the court that need not be particularly discussed in this opinion, as the same questions have heretofore been substantially disposed of in the opinion delivered in the case of *DeLouis* v. *Meek* and others above referred to. To sustain the demurrer the counsel for the defendants relied on the following positions:

1st. The bill is multifarious.

2d. The exhibits are not on file.

3d. The complainants have no equity.

The questions raised by the counsel for the defendants in their first objection to the bill, that it is multifarious, is one which has given occasion to much research and learned disquisition among jurists. So various are the transactions among men, and such is the complication in which their interests become involved, in strife, that in view of the relation they hold to each other, it has been found to be difficult to establish any absolute rule of law, which will precisely define a proper line in jurisprudence, which, on the principle of multifariousness, may, by general application, operate safely in the advancement of right and the enforcement of justice. In support of this objection to the bill, the counsel for the defendants have cited Story's Eq. Pl., §§ 271, 272, 279, 509. The two first sections cited present the case of persons joining in an action where

---

* 2 G. Greene, 55.

the case of each particular party is entirely distinct and separate in the subject matter from that of the other defendants or parties. But in the same sections it is stated by that learned author, that "the case of one defendant may be so entire as to be incapable of being prosecuted in several suits; and yet some other defendant may be a necessary party to some portion only of the case stated. In the latter case, the objection of multifariousness could not be allowed to prevail." Section 279 merely shows that the objection of multifariousness on account of various defendants, applies also to an improper joinder of plaintiffs, who claim no common interests, but assert distinct and several claims against the same defendant. It is to be observed that on this subject, learned writers direct the legal mind to the case where the parties joined in the bill show a separate interest in the subject matter of the suit.

In the case of *Campbell* v. *Mackay*, 7 Sim. R., 574, referred to in the note to § 278, by Judge Story, among other things that are well said on this subject, the court delivering the opinion says: "To lay down any rule, applicable universally, or to say what constitutes multifariousness, as an abstract proposition, is, upon the authorities, utterly impossible." The cases are so various, as before observed, that the courts, in deciding them, seem to have been governed by what was convenient in view of the great ends of justice, rather than to establish any particular rule of an absolute nature. This question was fully discussed and decided in the case of *DeLouis* v. *Meek*, by this court. We have found nothing to induce us to change the position there assumed. The particular parties plaintiffs, referred to in the argument of defendant's counsel, as holding such position, in the case presented by the bill, as to furnish ground for this objection, although they set up title by separate deeds of conveyance, from different persons, derived from Half Breed persons. of the Sac and Fox Indians, their several interests in the Half Breed lands are stated, and

they, in common with the other plaintiffs, complain of
fraud in the rendering and confirming of the decree of par-
tition, and seek by their bill to set it aside as an injury to
their rights as *bona fide* owners of shares in the land.
They, by the allegations of the bill, show an interest in
common with the other plaintiffs or complainants, in the
subject matter of the bill, and seek the same end; which is,
that the decree, by the judgment of the law may be declared
a nullity, on the ground of fraud. Moreover, in the pro-
cedure by trial to judgment throughout the case, there need
be no incompatibility produced. The pleadings and the
same issue must be alike applicable to all of the complain-
ants. The case of *Campbell* v. *Mackay*, 7 Sim. R., 564,
already cited, is, we think, quite in point here. That is a
case where there were three instruments, under each of
which the plaintiffs were entitled to a fund, and the defend-
ants who demurred were all of them accounting parties,
with the peculiarity that the defendants were not all parties
to all the instruments, in respect of which the relief was
sought. In the note, § 279, a case is cited, *Kensington*
v. *White*, 3 Price, 164, in which a bill was filed by seventy-
two, to restrain several actions on different policies effected
upon different ships. The defendants, who sought by their
bill to restrain the actions, were not only liable to several
actions, but actually defendants in separate actions; yet they
united in a bill against the plaintiffs in those actions, for
the purpose of obtaining by one bill a discovery to aid in
defending against all the actions, and that was held not to
be multifarious.

After examining again the decisions of the courts, as far
as we have been able to procure them, we feel constrained
to adhere to the doctrine heretofore laid down by us in the
case of *DeLouis* v. *Meek.** The sum of the doctrine there
advanced is, that " where there is unity in interest, as to
the object to be attained by the bill, the parties seeking

*2 G. Greene, 55.

redress in chancery may join in the same complaint and maintain their action together."

The counsel for the defendant cites Story's Eq. Pl., 409, to show that "where the suit is joint, a want of interest, in either of the plaintiffs, is equally fatal." This principle they apply to one of the plaintiffs in this suit, George Collier, who was, by motion, substituted in the place of Peter Powell, one of the original plaintiffs, who died *pendente lite*. To this we reply, that, in a proceeding in chancery, such as this, although the suit seeks to establish a right in real estate, still where the estate of the intestate is in the legal custody of the administrator for settlement, we think he may be properly substituted for the purposes of the action. By proper legal procedure upon a failure of personal effects to pay the debts of the decedent, the real estate may be sold and the proceeds of the sale be in the hands of the administrator, to be appropriated in payment of the debts. We think, that for the purposes of this action, he may act as plaintiff, and that for this cause the bill is not demurrable.

In maintainance of this doctrine on the subject of multifariousness, we cite the following cases: Story's Eq. Pl., § 284, where it is laid down that "a bill is not to be treated as multifarious because it joins two good causes of complaint, growing out of the same transaction where all the defendants are interested in the same claim of right, and where the relief asked for, in relation to each, is of the same general character." See, also, Story's Eq. Pl., §§ 530, 531, 532, 533, 534, 539; *Ballantine* v. *Beall*, 3 Scam., 206; *Turrick* v. *Smith*, 5 Paige, 560; *Bunkinhoff* v. *Brown*, 6 Johnson, Ch., 150; 2 Howard, Rep., 627, 641; 3 Howard, R., 411; 5 Howard, R., 131. We think the objection, on the ground of multifariousness, is not tenable.

2. The next ground of demurrer, that the exhibits are not on file, we think, cannot prevail; we deem the case in this respect as sufficiently before us. The deeds, &c., which are

Powell v. Spaulding.

not on file, were record matters, as referred to in the bill; and are in the usual manner, brought into court accompanying the bill. The proceedings in the suit, in relation to the same decree, being of record in the court and in its possession, open at the trial of this cause to the inspection and examination of the parties as well as the court, we think all the substantial purposes of the law are reasonably subserved.

3. The next ground of demurrer which we will consider is, that "the complainant's bill contains no equity to warrant any decree," and in connection with this, we will adopt the same course the counsel did who argued the case, by including the remaining causes of demurrer, as they amount to the same in substance. We have said already that the demurrer is general in its character, going in effect to the entire merits of complainants bill, and seeking to defeat their whole cause of action.

The bill seeks to set aside as void and of no effect the judgment of partition, and confirmation which by the judgment of the district court of Lee county, were entered on the records of said court on the 8th day of May, A. D., 1841, by which partition was made of the tract of land in said county, known as the Half Breed reservation. The bill charges that the decree or judgment of the court was obtained by the fraudulent confederation, and acts of the plaintiffs in the petition for partition upon which the decree was sought and obtained, together with others who united with them, and who with said petitioners are made and will be the beneficiaries thereof, to the injury of the complainants in this suit, if it be not set aside and declared void in law. The question presented by the demurrer is upon the equity of the bill of complaint as filed by the complainants. The bill is drawn at great length and with much skill, involving matter relating to various rights, of many persons who claimed to be interested in the subject of the controversy. The lands on which the decree operates are of great value. The number of acres in the Half

Breed tract are estimated to be about one hundred and nineteen thousand. Many and important interests are involved. It is therefore of much importance that a proper legal adjustment of the rights of the parties interested or claiming to be so, should be had.

That fraud, when properly established, vitiates and renders void the most solemnly made contracts, and even the judgments of judicial tribunals, is an established principle of the law. Since the abolishment of the court of star chamber in the reign of Charles the First, a court of chancery is the great tribunal in which matters of fraud are properly cognizable in order to their thorough investigation, and the procurement of the most ample relief. The jurisdiction of this court in matters of fraud is peculiarly calculated for the investigation of the devices of men in using an agency so insidious and subtle. The wisest and most learned jurists of the past time have failed to give a definition of fraud in the extensive signification, in which that term is used by the courts of equity. We again, as we have in a former opinion, adopt the language of Judge Story in his work on Equity Jurisprudence, p. 196, §186, where he says, in speaking of courts of equity: "These courts have very wisely, never laid down as a general proposition what shall constitute fraud, or any general rule, beyond which they will not go upon the ground of fraud, lest other means of avoiding the equity of the courts should be found out. Fraud is more odious than force." Fraud is considered by this learned commentator, under two heads — positive or actual, and constructive fraud. The first, where there is an intention to commit a cheat or deceit upon another to his injury; and the latter, of which there is a large class, which are established by legal implication. "Fraud, indeed, in the sense of a court of equity properly includes all acts, omissions, and concealments, which involve a breach of legal or equitable duty, trust or confidence justly reposed, and are injurious to another, or by

Powell *v.* Spaulding.

which an undue and unconscientious advantage is taken of another. And courts of equity will not only interfere in cases of fraud, to set aside acts done, but will also, if by fraud acts have been prevented from being done by the parties, interfere and treat the case exactly as if the act. had been done."

Lord Hardwick is quoted by Judge Story's Equity Jur § 188, p. 198, as follows: "After remarking that a court of equity has an undoubted jurisdiction to relieve against every species of fraud, proceeded to give the following enumeration of frauds:

"Firstly. Fraud, which is *dolus malus*, may be actual, arising from facts and circumstances of imposition, which the plainest case. Secondly. It may be apparent from th. intrinsic nature and subject of the bargain itself, such as n man in his senses, and not under delusion, would make, o: the one hand, and as no honest and fair man would accept, on the other, which are unequitable and unconscientious bargains, and of such even the common law has taken notice. Thirdly. Fraud, which may be presumed from the condition of the parties contracting; and this goes farther than the rule of law, which is, that it must be proved, not presumed. But it is wisely established in the court of chancery, to prevent taking surreptitious advantage of the weakness or necessity of another, which knowingly to do is equally against conscience, as to take advantage of his ignorance. Fourthly. Fraud may be collected and inferred, in consideration of the court of chancery, from the nature and circumstances of the transaction, as being an imposition and deceit on other persons not parties to the fraudulent agreement. Fifthly. Fraud in what are called catching bargains with heirs, reversioners, or expectants in the life of the parents, which, indeed, seems to fall under one or more of the preceding heads."

Where there is a *suggestio falsi*, as when a party inten
30

tionally and by design misrepresents a material fact, or produces a false impression, in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage of him, in every such case there is fraud—in the truest sense of the term, there is an evil act with an evil intent. And the misrepresentation may be as well by deeds or acts as by words, by artifices to mislead as well as by positive assertion. Story's Eq. Jur., p. 201, §§ 192, 193; 4 Wash. C. C. R. 678; 1 Peters, 785. "Whether the party, thus misrepresenting a fact, knew it to be false, or made the assertion without knowing it to be true or false, is wholly immaterial, it is equally conclusive; for it operates as a surprise and imposition on the other." The misrepresentation must be as to matter of materiality where confidence is reposed, and the party complaining must be misled to his injury by it. Such fraud and damage coupled together will entitle the injured party to relief in any court of justice. Fraud by *suppresio veri* is also a proper subject for investigation in a court of chancery, and when established by positive and direct or circumstantial evidence, the court will administer relief to the injured party. It consists in the suppression of material facts, which one party, under the circumstances, is bound in conscience and duty to disclose to the other; and in respect to which he cannot, innocently, be silent. This species of fraud is defined by Judge Story, in his Equity Jurisprudence, to be in the sense of a court of equity, "the non disclosure of those facts and circumstances, which one party is under some legal or equitable obligation to communicate, and which the other party has a right, not merely in *foro conscientiæ*, but *juris et de jure*, to know." § 207.

Now, how does the case at bar, as presented by the bill of the plaintiffs, and the demurrer of the defendants, stand, in view of the principles of equity here advanced? The bill alleges fraud generally, in the procurement of the

Powell *v.* Spaulding.

decree, on the part of the petitioners for partition, their agents and attorneys. It also, satisfactorily, for the purposes of legal investigation, sets forth the character and amount of their claims to interest in the tract of land which is the subject of the decree. It furthermore alleges fraud specially, by setting forth the particular facts and circumstances in which the fraud consists, and by which the complainants have been, respectively, deprived of their rights by the fraudulent confederation and acts of the petitioner's partition, and their agents and attorneys, in the procurement of the said decree of partition. The bill charges fraud upon the defendants, actual and constructive. If any of the charges or specifications, contained in the bill, are good in law, and by reason thereof the plaintiffs are entitled to relief or discovery, the demurrer which goes to the whole cannot be sustained. 9 Peters, R., 632, 658; 1 John. Ch. R., 57; 5 John. Ch. R., 186.

The bill, by its allegations, shows that the several complainants, before and at the time of the procurement and making of the decree, were the *bona fide* owners of shares, or parts of shares, in the Half Breed tract of land; that a large majority of the shares and interests, in quantity and value, which were decreed and admitted in said decrees of partition and confirmation, were spurious, fictitious and fraudulent, that this fact was well known to the parties in said decree, their agents and attorneys, at and before the time of the rendition thereof; and that it was well known that there were not more than fifty full Half Breed shares in said tract of land, which should have been included in said decree of partition. This, together with the eleventh, eighteenth and twenty-fourth specifications of fraud, considered in connection with the other facts to which they relate, and which enter into them as ingredients, contains good and substantial ground of fraud, properly cognizable in a court of chancery; and which, if duly proved, would

entitle the complainants to the relief prayed for in the bill. The bill, in these specifications, clearly charges that the defendants used cunning, deception, falsehood and artifice to circumvent, cheat, and deceive the complainants, who claim to be *bona fide* owners of the interests in the Half Breed tract of land, by the procurement of the decree of partition and confirmation thereof; and further, that imposition and fraud were practiced upon the court so as to procure the decree to be entered, without examination, in form and substance, as it had been by the parties, their agents and attorneys, clandestinely and fraudulently made up. Here, then, are charges involving facts and circumstances which not only afford a strong presumption, amounting to constructive, but establishing ground for actual fraud. See Story's Eq. § 190, and same author, as heretofore cited.

As to the allegation that Reid and Johnston appeared for Wright and others, defendants in the suit for partition, and in making the compromise upon which the decree was made, without authority from them to do so, and the fraudulent design with which it is averred they appeared, we refer to the case of *DeLouis* v. *Meek*, 2 G. Greene, 55, where this matter has been, by this court, adjudicated; and to *Holker* v. *Parker*, 7 Cranch., 436, Story's Eq. Jur., p. 326, § 133; *Truett* v. *Wainwright*, 4 Gilman, 420; *McCarver* v. *Neally*, 1 G. Greene, 360; *Hopkins* v. *Mallard*, ib. 117.

Attorneys cannot, without authority from their clients, make contracts or compromises which will operate injuriously upon them; much less can they be allowed to appear and act for them, without authority from them to do so, to their injury. For such acts courts of chancery will afford relief. The effect of this point, so far as this bill is concerned, would amount to a fraud upon Wright, if he were a complainant, showing that he was injured by the decree and seeking redress. It can only be available to those who are complainants in this action.

As to the manner in which the facts and circumstances on which the plaintiff's rely for the maintenance of their suit, much had been presented, and ably urged by the counsel for the defendants, to show that the demurrer should be sustained by this court and the bill dismissed. Nevertheless, we consider that the bill must be sustained, and the defendants requested to answer to it by a trial on its merits, before the proper tribunal. The conclusion to which this court has arrived, we think, is fully sustained by the opinion delivered in the case of *De Louis* v. *Meek*, and the authorities there cited. Story's Eq. Pl., § 28; *Whelan* v. *Whelan*, 3 Cowan, 57; 6 How., 120; *Nesmith et al.* v. *Calvert*, Wood and Menot, 44; *Smith* v. *Burnham*, 2 Sumner R., 612; *Jenkins* v. *Eldridge*, 3 Story R. 181.

The other matters charged in the bill as fraudulent, and which we have not particularly discussed in this opinion, we have omitted to notice, deeming it unnecessary, as we consider them merely as irregularities, which should have been presented to the proper supervisory tribunal as error, there to be corrected in accordance with the principles of law.

The judgment of the district court is reversed, and the cause remanded for trial.

Judgment reversed.

*J. C. Hall* and *C. H. Phelps*, for appellants.

*H. T. Reid*, for appellee.