Spencer, J.
Two questions arise in this case: 1. What is the nature and effect of the parol agreement set up by the respondent? 2. What is the operation of the written agreement, as.it respects the respondent ?
I am satisfied that the decree cannot be maintained,on the verbal agreement, admitting even that such an agreement was made, and that the respondent sent the 100 dollars by Jonas Warren, to be paid on the faith of that agreement; for the proposition or agreement was not valid at the time it was alleged to have been made with one of the appellants; it was an executory agreement founded on no consideration; and there was a locus penitentim to the party, who was at liberty to waive or execute it. Besides, it was not assented to by the respondent, who had time to think of the proposition, and execute the agreement or not, as he should, afterwards, see fit. To render such an agreement valid, both parties must be bound, or neither. When, therefore, Jonas Warren paid the 100 dollars to one of the appellants, he paid it on the faith of the written agreement which he accepted. It would be against established principles to permit a parol agreement to be set up against a written stipulation. The decree must rest, therefore, for its support, entirely on the written agreement.
This agreement is dated the 11th of November, 1808, and was given without the knowledge or assent of the respondent. It stipulated that no execution should be issued, for the purpose .of fixing the bail, on the judgment against Jonas Warren, until after the 20ih February following. It was admitted in the case, and tras proved by Jonas Warren, that when the writing was given, he was about going to sea, and did actually sail a few days afterivards, and that he paid the appellants the 100 dollars, as an inducement to them to grant him this indulgence. The. respondent was arrested on the 2d May, 1809, in a suit on the recognisance of bail, and Jonas Warren did not return to this state until about the first June, 1809; and the respondent became fixed, as bail, in May term, 1809.
*603 It has been argued that James Warren, the respondent, was Mot a surety, within the principle's applicable to sureties. But, though there was no communication between him and the appellants, yet he is to be, considered, by act of law, to all intents and purposes, a surety. On his becoming bail, to which the appellants must be deemed to have assented, he undertook that the principal should pay the condemnation money, or surrender himself to prison, or that he would do it for him.
The appellants, who are to be treated precisely as if they were the obligees of a bond, have thought proper, on receiving part of their debt from the principal, to enter into a stipulation not to proceed against him, in the only useful way he could be proceeded against, as he appears to have had no property, until after a certain day. This stipulation undoubtedly induced the principal to leave the state; and the situation of the bail was thereby materially changed, and his risk greatly increased. It appears to me, that on principles of good faith and common honesty, this act must be deemed to have exonerated the bail. In the language of Lord Loughborough, in Rees v. Berrington,* the appellants, by this stipulation, “ put it out of their power to perform that, which the nature of the relation between the surety and the person for whom he is bound, requires. It is a breach of the obligation in conscience and honesty; and, it is not too much to say, of that obligation in point of law.” And his lordship, in that case, refused to “ try the cause, by inquiring what mischief it might have done; for that would lead to a vast variety of speculations, upon which no sound principle could be built.” The principle adopted in the decision of that case was, that there could be no transaction with the principal debtor, without acquainting the surety, who has a deep concern in it. “ You cannot,” says his lordship, “ keep him bound, and transact his affairs,' without consulting him.” Lord Thurlow, in Nesbit v. Smith,† held nearly the same language. The principle of these cases appears to me to be sound and correct, and the facts of this case warrant its application ; for the respondent was not only injured by the arrangement with the principal, and his consequent departure from the state, and not returning until after the time for his surrender had past, but this arrangement was made entirely without his assent.
I have no doubt that this was a case of equity jurisdiction. I do not say that there was no defence at law; but the remedy was doubtful. Besides, the respondent had a right to call the appellants *604 into a court of equity, to account for the money received by them of the principal; and it is a settled rule, that when the court of chancery has gained jurisdiction of a cause for one purpose, it may retain it generally. I am of opinion that the decree of the court below ought to be affirmed.
This being the unanimous opinion of the court, it was thereupon ordered, adjudged, and decreed, that the decree of the court of chancery be affirmed; and that the appellants pay to the respondent one hundred dollars for his costs in defending the appeal, and that the record be remitted, &c.
Judgment affirmed»
END OF CASES IN ERROR.

 2 Ves. jun. 543.

 2 Bro. Ch. Cas. 570. 582.