THOMAS DAVIS, PLAINTIFF IN ERROR, *v.* WILLIAM M. TILESTON AND COMPANY.

Where a bill in equity sought to enjoin a judgment, and charged that the complainant had a good defence which he did not know of at the time when judgment at law was rendered against him, and charged also that he was entitled to pay the debt in the depreciated notes of a particular bank, of which advantage it was attempted to deprive him by fraud and collusion, and this bill was demurred to, it was error in the court below to sustain the demurrer.

This case was brought up by writ of error from the District Court of the United States for the Northern District of Mississippi.

In the year 1838, Thomas Davis, the plaintiff in error, received three thousand dollars from the Aberdeen and Pontotoc Railroad and Banking Company in the notes of that institution, and gave his bond for the delivery of seventy-five bales of cotton at the town of Burlingham, on the Tallahatchie River, on or before the 1st day of the ensuing March. According to his own statement in the bill which he afterwards filed, he paid $ 1,685.50, and delivered eighteen bales of cotton, subject to the order of the company. The precise time of this payment and delivery was not stated.

On the 12th of December, 1839, William M. Tileston and Charles N. Spofford, residing in New York, and carrying on business under the name of William M. Tileston & Co., obtained a judgment in the District Court of the United States for the Northern District of Mississippi against the Aberdeen and Pontotoc Railroad and Banking Company, for a sum of money, the amount whereof is nowhere stated in the record.

Upon this judgment, a writ, called a writ of garnishment, was issued by way of execution, and served upon Davis. This writ was returned, duly executed, to June term, 1840.

At December term, 1840, judgment was rendered against Davis and his securities, as debtors to the Aberdeen and Pontotoc Railroad and Banking Company for $ 1,861 and costs.

Davis *v.* Tileston et al.

A *fieri facias* was issued upon this judgment in favor of Tileston & Co., returnable to June term, 1841.

On the 10th of June, 1841, Davis paid, on account of the judgment, $242.77, which was duly credited.

At December term, 1841, a return was made of property levied upon, with its valuation, but no further proceedings appear then to have taken place.

In July, 1843, Davis filed a bill on the equity side of the court against Tileston & Co., to enjoin the judgment obtained against him at December term, 1840. The bill recited the above facts, and then proceeded thus : —

" Your orator further states unto your Honor, that, before the rendition of the said judgment upon the said garnishment in favor of William M. Tileston & Co. against your orator, he paid upon the said cotton bond $1,685.50, or about that sum, and delivered at the town of Burlingham, according to his contract, eighteen bales of good cotton, averaging in weight about five hundred pounds, and subject to the order of the said Aberdeen and Pontotoc Railroad and Banking Company, and which cotton was shipped on board of steamer Big Black, Steilling, master, without the orders of or being subject to the control of your orator ; and said cotton was left by said steamer at the house of and in the care of Young & Richards, Vicksburg, Miss., and by them twelve of said bales were shipped to George Buckanan, of New Orleans, for the benefit of and on account of the said Aberdeen and Pontotoc Railroad and Banking Company. The remaining six bales were shipped and sold in New Orleans, from the said house of Young & Richards in Vicksburg, for the benefit of and in the name of one Dickens, for between fourteen and fifteen cents per pound ; and the said Dickens was found by your orator on the western bank of the Mississippi River, in the State of Arkansas, about forty miles above Memphis, Tennessee ; and the proceeds of the sale of the said six bales of cotton were collected from him by your orator, amounting to about four hundred dollars, but not one cent has ever been collected for the twelve bales shipped to Buckanan, for and on account of the said bank, or applied by said bank to the credit of your orator's bond.

" Your orator further states, that, relying upon the statements of the agents of the said bank, solemnly made and often reiterated, that they knew nothing about the twelve bales of cotton or any other part of the eighteen bales shipped as before stated, he did not know of the shipment of said twelve bales of cotton from Young & Richards, Vicksburg, to Buckanan, of New Orleans, for and on account of the said Aberdeen and Pontotoc Railroad and Banking Company, until long after the

rendition of said judgment in December, 1840, against your orator, as a debtor to said bank, in favor of the said William M. Tileston & Co., and was kept from his legal and lawful defence and credits, on the trial of said garnishment, by the false assurances of the bank and its agents, so made to your orator as aforesaid, and, as your orator fully believes, intended for and made to lull him to sleep, and impose upon his general credulity and confidence in his fellow-man where the least show of honesty is to be discovered. Your orator further states unto your Honor, that he was not apprised of, but wholly ignorant of the fact, that the said twelve bales of cotton were shipped by the agents of the said bank from Vicksburg to New Orleans, as above stated, until by a critical examination, about a year or thereabouts since, through his agent, the facts were ascertained to be as before stated."

The bill then proceeded to charge a fraudulent combination between the bank and Tileston & Co., by setting up a fictitious claim against the bank for the purpose of depriving Davis of the benefit of paying the bank in its own depreciated notes, and finally averred that the only part of the debt still due was $ 809.47, which he tendered in the notes of the bank.

An injunction was issued according to the prayer of the bill.

In June, 1844, the defendants filed a demurrer, and assigned the following causes : —

1st. The bill shows that the complainant had a full and complete remedy at law, which he has neglected.

2d. That the bill shows that complainant knew, at the time he answered the garnishment against him, that no credit had been given for said cotton, and having at that time acquiesced in the conduct of the bank, and acknowledged himself indebted to the amount of defendant's judgment, he cannot now reopen the judgment in this court to be heard, to deny what he might and ought to have denied in his said answer to said garnishment.

3d. That it appears, by complainant's own showing, that judgment was rendered against him on his answer at December term, 1840 ; that he made a payment and satisfaction of said judgment by the execution and forfeiture of a forthcoming bond in May, 1841 ; that as late as between June and December, 1841, he took the benefit of the valuation law on said execution, and postponed further action by the said defendants for twelve months thereafter, without ever settling up the matter contained in his bill, or claiming any deduction or offset from the said judgment in favor of defendants.

4th. That the pretended charge of fraud is not specifically stated, but is vague, uncertain, and indefinite in general.

5th. That the said bill seeks to offset the judgment of defendants against said complainant on his answer, and to pay and discharge the same with the bills and liabilities of the Aberdeen and Pontotoc Railroad and Banking Company, obtained by .him after he has acknowledged himself indebted in his answer, and after judgment has been rendered against him in favor of defendants, and after he has executed a forthcoming bond, and the same has been forfeited and become a new judgment against him in favor of defendants, and after he has availed himself of the valuation law on said judgment

6th. That the said bill shows no equity on its face.

There being a joinder in demurrer, the case was, on the 11th of June, 1844, set down for hearing on the bill and demurrer at the next term of the court.

On the 2d of December, 1844, a rule for decree *pro confesso* was entered, and on the 3d of December, the defendants, Tileston & Co., filed their answer, which it is not necessary to recite.

On the 6th of December, 1844, the final decision of the District Court was signed and ordered to be enrolled, as follows: —

" This cause came on to be heard at this term, and was argued by counsel; and thereupon, upon consideration thereof, it was ordered, adjudged, and decreed as follows, viz.: that the demurrer of the defendants to the said bill of complaint of the complainants be sustained, and the said bill dismissed.

" It is further ordered, adjudged, and decreed, that the defendants go hence and recover of the complainants the costs in and about this cause expended, for which execution may issue."

The complainant appealed from this decree to this court.

The cause was argued by *Mr. R. Davis*, for the appellant, and *Mr. S. Adams*, for the appellees.

Mr. Justice WOODBURY delivered the opinion of the court.

The judgment in this case below was founded entirely on the bill in chancery and the general demurrer to it.

There is in the record an answer filed a few days previous to the judgment. But the cause having before been set down for a hearing on the bill and demurrer, the answer does not appear to have been at all considered, — for that or some other reason, — and is not referred to in the decision.

The only question for consideration by us, then, is, whether the judgment dismissing the bill on the demurrer was correct.

Upon a careful examination of the facts and principles in-

volved, we feel constrained to come to the conclusion that it was not correct. We are reluctant to form this conclusion, because, on examining the contents of the bill, it does not in some aspects of it appear free from what is exceptionable, and the answer, if open to consideration now, would show a denial of most of its material allegations.

But as the answer in the present decision must be put out of the question, and as the demurrer admits all facts duly alleged in the bill, the plaintiff seems entitled to judgment on these admissions, though, to prevent injustice by oversight or mistake, we shall take care to render such an opinion that the respondents can be enabled in the court below to avoid suffering, if they possess a real and sufficient defence to the bill. The grounds of our judgment are as follows.

The demurrer, by admitting the truth of the allegations in the bill, admits these facts: —

1st. That the complainant had a good defence to a large part of the original judgment recovered against him, as garnishee of the bank, and which he did not know at that time.

2d. That he was entitled to pay to the original creditor, the bank, its own notes in discharge of any balance due to it, and which were under par, and that, through fraud between the bank and the respondents, the demand against him was assigned to them, and he sued as garnishee of the bank, in order to exclude the payment in its notes.

The former judgment having been in the District Court of the United States, these grounds for an injunction against the further enforcement of it till the mistake as to the defence is corrected, and the balance allowed to be satisfied in notes of the bank then held, or an equivalent to their value at the time of the judgment, seem equitable on these allegations, thus admitted.

The respondents can, *ex æquo et bono*, claim to stand in no better condition than the bank. If there was a further good defence against the bank, there was against them. And if in any material respect they and the bank fraudulently combined, by or in that suit, to deprive the debtor of any legal advantage, the least which can be done in equity is to restore him to it.

What is the answer to this view? Not that the demurrer does not in law admit the goodness of a further defence, and one not known at the judgment, and likewise the existence of fraud by those parties, but that the statement of the defence is not entitled to full credit, is contradictory, and develops culpable neglect to enforce the defence, and that the fraud is not set out with sufficient detail.

But so far as regards the credibility to be given to the state-

ment of the further defence in the bill, that statement cannot be impugned on a demurrer. The truth of it can be doubted only where a denial of it is made in an answer, or proof is offered against it, neither of which is now before us. The next objection, founded on some supposed contradictions in the bill, as if not knowing the existence of the defence when he delivered the cotton on which it is founded, can be reconciled on various hypotheses, which need not here be detailed. For, however this may be, we think the allegations sufficiently distinct on a general demurrer.

The validity of the defence as alleged is resisted as the last objection, and rests on the ground, that he had an opportunity to make it at law and omitted to improve it. This principle is conceded to be correct, if the defence was then known. But the bill avers he was ignorant of the existence of the defence when the judgment was recovered. This excuse in some instances might not avail him at law. It has been settled, that in an action at law, if the party omits to make a defence which existed to a part or all of the cause of action, he can afterwards have no redress in a separate legal proceeding. Tilton *v.* Gordon, 1 N. Hamp. 83; 7 D. & E. 269; 1 Ld. Raym. 742; 9 Johns. 232; 2 N. Hamp. 101; 12 Mass. 263. In such case, he can sometimes obtain relief by a petition for a new trial, but seldom in any other manner.

In certain instances, if the defence arose out of something subsequent to the original cause of action, such as a part payment of money, or a delivery of property to be applied in part payment, and the creditor neglected to make the application, it has been held that this may be treated even at law as a distinct transaction, the creditor having thus rescinded or failed to fulfil his promise to apply the money, and a separate action be then maintained to recover it back. Snow *v.* Prescott, 12 N. Hamp. 535; 7 N. Hamp. 535.

However this should be at law, there is strong equity and substantial justice in it, and much more in cases where, as is usual, the debtor is defaulted, having no defence to the original cause of action, and supposes that the creditor, in making up judgment, will deduct all payments and all promised allowance, and does not discover the neglect to do it till after execution has issued.

The present application being in equity and not at law, a party in the former is clearly entitled to an injunction, if there was accident, or mistake, or fraud, in obtaining the judgment.

So ignorance of a defence goes far, sometimes, to repel negligence, though standing alone it may not be a sufficient ground

for such relief. See 1 Bibb, 173; Cook, 175; 4 Hayw. 7; 4 Mumford, 130; 6 Hammond, 82; Brown v. Swann, 10 Peters, 498, 502; 2 Swanston, 227; Thompson v. Berry, 3 Johns. Ch. 395.

On this point, however, we give no decisive opinion, because all of us are not satisfied that a clear remedy can be given at law on these facts by a separate action, and as we have jurisdiction of this cause on the other ground of fraud, we advert to this merely as being one of the plausible reasons in favor of an injunction, till the whole matters between the parties can be further investigated. (See reasons for this course in United States v. Myers, 2 Brock. 516; 1 Wheat. 179; 2 Caines's Cas. in Err. 1; 10 Johns. 587; 1 Paige, Ch. 90.)

The existence of fraud in obtaining the original judgment, which is the other ground assigned for relief, is next to be considered. It is not only alleged generally, but in the details, so far as already specified, in this opinion. A general allegation of it in the bill would have been sufficient, if so certain as to render the subject-matter of it clear. (Nesmith et al. v. Calvert, 1 Woodb. & Minot, 44; Smith v. Burnham, 2 Sumner, 612; and Jenkins v. Eldridge, 3 Story, R. 181.) The demurrer admits the fraud thus set out, and the law is undoubted, that our jurisdiction in equity extends over frauds generally, and in a special manner one like this, to which it is doubtful whether any remedy existed by law when defending the original action. 2 Caines's Cas. in Err. 1; 10 Johns. 587; 1 Paige Ch. 90; 2 Stuart, 420.

The character of this fraud, as admitted by the demurrer to exist, is one of great injustice to the community, it being equitable, no less than legal, in Mississippi, by an express statute, for debtors of a bank to make payment to it in its own bills. (Laws of Miss., A. D. 1842, p. 140.)

It seems generally allowable, even on common law principles, as a set-off. See the express declaration to that effect by this court in The United States v. Robertson, 5 Peters, 659; see also Planters' Bank v. Sharp et al., at this term.

Looking probably to a transaction much like the present, the court, in 5 Peters, say, — "So far as these notes were in possession of the debtor at the time he was summoned as a garnishee, they form a counter claim, which diminishes the debt to the bank to the extent of that counter claim." But how the balance is to be paid in respect to notes, the court forbore to give any opinion (p. 684).

Any assignment or other proceeding got up with the fraudulent intent of preventing the exercise of that right, as is here alleged and admitted, cannot receive the countenance of this court.

But we do not decide on the extent at law to which such a defence can be made in Mississippi, or in respect to the manner of paying the balance; as all our conclusions here rest entirely on the averments and the admission of their correctness by the demurrer.

In coming to our conclusions, we by no means would be understood, as before intimated, to approve all the language or forms of allegation adopted in this bill. But we are forced to think that enough is stated in it, in substance, to give us jurisdiction, and to entitle the complainant to relief, when the statement is not denied by the respondents.

The judgment below in favor of the demurrer is, therefore, reversed. But in order that justice may be done between these parties on the answer and any evidence either of them may wish to file, final judgment is not rendered here for the plaintiff, but the case is remanded, in order that leave may be given to the respondents to withdraw their demurrer, and the cause be heard on the bill and answer, if no evidence is desired to be put in; or on these and such evidence as the parties may wish to offer.

### *Order.*

This cause came on to be heard on the transcript of the record from the District Court of the United States for the Northern District of Mississippi, and was argued by counsel. On consideration whereof, it is now here ordered and decreed by this court, that the decree of the said District Court sustaining the demurrer to the bill of complaint be and the same is hereby reversed with costs, and that this cause be and the same is hereby remanded to the said District Court, in order that leave may be given to the respondents to withdraw their demurrer, and that the cause may be heard on the bill and answer, if the parties do not desire to put in any evidence, or on the bill and answer and such evidence as the parties may wish to offer.