SAMUEL SAMPLE, ISRAEL W. PICKINS, AND BURWELL SCOTT, APPELLANTS, *v.* SHADRACH BARNES.

Where there was a judgment at law against a defendant in Mississippi, and he sought relief in equity, upon the ground that the consideration of the contract was the introduction of slaves into the State, and consequently illegal; a court of equity will not grant relief, because the complainant was in *pari delicto* with the other party.

Moreover, such a defence would have been good at law, and the averments, that deception was practised to prevent the complainant from making the defence, are not sustained by the evidence in the case. And, further, after the judgment, the complainant gave a forthcoming bond, thus recognizing the validity of the judgment.

THIS was an appeal from the Circuit Court of the United States for the Southern District of Mississippi.

The facts are all stated in the opinion of the court.

It was argued, in a printed brief, for the appellants, by *Messrs. Walker, Freeman,* and *Volney E. Howard.* No counsel appeared for the appellee.

The argument consisted chiefly in comments upon the testimony, and contending that giving a forthcoming bond did not recognize the validity of the judgment.

The giving and forfeiture of the forthcoming bond did not deprive the party of his right to a decree for a new trial at law. It is, in legal effect, little more than the ordinary bond of replevin. There was no judicial proceedings on the forfeiture, and no right, under the laws of Mississippi, to inquire into the irregularities, errors, or frauds of the original judgment. The giving of the bond therefor did not operate a delay in presenting his defence at law. He could only make it in equity.

It has been decided, in Mississippi, that the giving and forfeiting of a forthcoming bond operates as an extinguishment of the original judgment. But this has been held with reference to judgment liens and process. The courts would not, of course, permit an execution on the original judgment, and on the statutory judgment on the forthcoming bond, or sustain liens on both judgments. The courts of that State, however, have fully recognized the principle, that the statutory judgment rested entirely on the judicial judgment, and have held that the former could not be supported without the latter, and became void on its reversal. Hoy *v.* Couch, 5 How. Miss. Rep. 188. If, therefore, the appellant had a good cause for a new trial in chancery, he did not lose it by giving the forthcoming bond. So far as the merits and the equity is concerned, both proceedings are but one judgment. The statutory proceeding is only held a judgment, as a mere legal fiction, and cannot stand in the way of a court of equity.

Mr. Justice DANIEL delivered the opinion of the court.

In their bill, filed in the Circuit Court, it is alleged by the appellants that, in the month of October, 1836, the appellee, Barnes, in conjunction with one Dunett, introduced from other States of the Union into the State of Mississippi, and in violation of her constitution and laws, a number of negro slaves, for the purpose of being sold as merchandise. That, in execution of the design for which they were introduced, a number of those slaves were sold by the appellee to one Thomas B. Ives, from whom he took, in payment, a bill of exchange, bearing date in October, 1836, drawn by Ives on N. and J. Dicks, of New Orleans, and indorsed by the appellant, Sample, and one G. A. Thompson. That this bill, being presented first for acceptance and subsequently for payment, was, in each instance, refused by the drawees, but was not protested either for non-acceptance or non-payment. That, after these transactions, upon some agreement between Barnes and Ives, a second bill of exchange was, in 1837, drawn by the latter upon the firm of Ford, Markham, & Co., for $5,916.66, at ten months after date, and was indorsed by the appellant, Sample, and by George A. Thompson, the indorsers of the previous bill, and was substituted in lieu thereof. That this second bill was not paid; but whether it was protested, or whether notice of its dishonor was ever given, the appellant, Sample, states that he was unable to recollect. That Barnes, being urged by Sample to sue Ives immediately for the amount of the second bill, instead of complying with this direction, took a deed of trust on certain property of Ives, stipulating in this deed to give further time for the payment of the bill; and that this deed of trust, and the agreements therein contained, were made without the knowledge and against the consent and directions of the appellant, Sample, and in fraud of his rights as a surety. That a suit having been instituted in the Circuit Court of the United States for the Southern District of Mississippi, against Sample, as the last indorser of the bill of exchange drawn on Ford, Markham, & Co.; the said Ives, upon information being given him of that fact by Sample, assured him that he need not feel any uneasiness on that account, as he, Ives, had employed able counsel to defend him in that suit. That, subsequently to this assurance from Ives, in a conversation of the appellant, Sample, with Barnes, the latter promised him, that, if Ives would confess a judgment in the State court for the amount of the bill, he, Barnes, would dismiss the suit he had instituted against the appellant as indorser of that bill That, upon communicating to Ives the proposition of the appellee, Ives professed his perfect readiness to comply with that proposal, and Barnes then parted with the

appellant, with the professed purpose of obtaining from Ives a confession of judgment, and at the same time agreed with the appellant, Sample, that, in the event of a failure by Ives to give such confession, he would inform Sample thereof, in order that they, conjointly, might endeavor to obtain from Ives a fulfilment of his promise. That Barnes omitted to give information of the refusal on the part of Ives; but permitted the appellant, Sample, to remain under the impression that a confession of judgment had been given by Ives, until after the commencement of the Circuit Court, in the month of May, 1839, when the appellant, Sample, was informed by Barnes that Ives was insolvent. That, by these circumstances, and especially by the conduct of Barnes, Sample was thrown off his guard, and a judgment by default was, in consequence thereof, rendered against him at the May term of the Circuit Court, in 1839, for the sum of $6,822.62, and the costs of suit. That, execution having been sued out on this judgment, the appellant, Sample, in conformity with advice given him, had, with the other appellants, Pickins and Scott, as his sureties, executed a forthcoming bond for the delivery to the marshal of the property therein named; which bond, having been forfeited, operated as a judgment, and execution thereon had been sued out, and had been levied on the slaves and other personal property of Sample.

Upon the foregoing statements, the appellants prayed, that the original contract for the sale of the slaves by Barnes, and all the undertakings and liabilities growing out of that sale, might be declared to be void as having been in violation of the constitution and laws of Mississippi; and that for this cause affecting the character of the contract, and by reason too of the fraud and deception imputed by the bill to the appellee, Barnes, with reference to Sample, the judgments and executions obtained for his benefit might be perpetually enjoined.

Upon the 24th of April, 1840, an injunction was awarded the appellants by the Judge of the District Court of the United States for the Southern District of Mississippi.

To that portion of the bill which charges the introduction of slaves in violation of the constitution and laws of Mississippi, the appellee declines to answer, as that charge included the liability to a criminal prosecution. To this refusal of the appellee no exception was taken, either in the pleadings or at the hearing of the cause. To every other charge in the bill the answer is directly responsive, and fully denies every material allegation. And with respect to all the charges, inclusive of the first, the testimony adduced by the complainant below, falls far short of sustaining any one of them. It is deemed loose, vague, and immaterial. Nay, the very contract with Ives, filed as an exhibit

with the bill, and which is alleged to have been an agreement for indulgence to Ives, to the prejudice of the rights of Sample, absolutely overthrows this assertion, and is shown upon its face, and by its terms and object, to have been simply an additional security from Ives, operating, if at all, for the advantage of Sample; a security too, which the grantee, in that instrument had the right to enforce immediately upon failure to pay the bill of exchange drawn on Ford, Markham, & Co.

Upon the hearing of this cause before the Circuit Court at the November term of 1848, the injunction which had been awarded the appellants was dissolved, and the bill dismissed with costs. For the examination of that decree upon appeal, this cause is now before us.

This case is then left to be decided upon its features, as disclosed in the bill and answer; and the application to these of a few settled and familiar principles of equity jurisprudence, will at once determine its fate. And first with respect to the intrinsic merits of the appellant's original claim to exemption from liability; and secondly, as to the degree or extent in which such claim, if ever existing, has been affected by his own conduct, as evincing either the assertion or the surrender of that claim. The bill commences by charging the introduction and sale of slaves within the State of Mississippi, in violation of the constitution and laws of that State, as the essential ground of impeachment of the original contract and of Sample's exemption from liability accruing therefrom. Yet it is somewhat singular, that whilst urging this objection and whilst admitting his participation in the sale, by giving it the sanction of his name and credit, he is entirely silent as to any knowledge by him as to the illegality of a transaction in which he bore so important a part. He certainly possessed, at some period of time, knowledge of the character of that transaction; and if his knowledge reached back to its origin and purposes, or to the date of his own participation therein, he must be viewed as standing *in pari delicto* with all similar actors therein — a position which, however it might shield him against attempts from associates in wrong, so far as these should be urged through the instrumentality of courts of justice, can invest him with no rights, either at law or in equity as against advantages acquired by his confederates. The appellant, Sample, was certainly bound to show himself clear of the taint of a transaction which he denounces as illegal and fraudulent, but in which he shows that he has mingled from its inception, and which he deliberately ratified at an interval of six months after his first participation in it. His failure to do this, if his denunciation of the transaction be taken as true, must be decisive of his fate before a tribunal which lends its

aid or countenance to those only who can present themselves with pure hands, and who are free from suspicion.

The rule, as applicable to the position of this party, a rule believed to be without exception, has been distinctly announced by this court in a case very similar in most of its features to the one now before us; for that, like the present, was a case in which the contract was impeached for precisely the same reason for which the interposition of equity was here invoked; and in that, too, as in this instance, after the omission to set up a defence at law. We allude to the case of Creath's Administrator v. Sims, in the 5th of Howard, where this court, on page 204, have thus announced the rule by which courts of equity are governed. " Whosoever," say they, " would seek admission into a court of equity must come with clean hands, and such a court will never interfere in opposition to conscience or good faith. The effect of these principles upon the statements of the complainant is obvious upon the slightest consideration. The complainant alleges that the obligation to which he had voluntarily become a party was intentionally made in fraud of the law, and for this reason he prays to be relieved from its fulfilment. This prayer, too, is addressed to a court of conscience, to a court which touches nothing which is impure. The condign and appropriate answer from such a tribunal to such a prayer is this, that, however unworthy may have been the conduct of your opponent, you are confessedly *in pari delicto;* you cannot be permitted here to plead your own demerits: precisely therefore, in the position in which you have placed yourself, in that position we must leave you." The attitude of the appellant, Sample, in connection with this aspect of the case, would of itself alone be conclusive against his application to equity for relief; but as this party has adduced other reasons upon which he has supposed himself entitled to equitable interposition, it may not be out of place to show their utter inconsistency with the very rudiments of equity jurisprudence; with principles so familiar to the courts and to the profession as to render their particular annunciation scarcely necessary. The defence now attempted to be set up by Sample, viz.: the illegality under the constitution and statutes of Mississippi of the consideration for which the two bills of exchange were given, if true, was a legal defence, to be availed of in the action at law by plea or demurrer. Of this principle he seems to be aware, and therefore he endeavors to escape from its operation by attempting to fix upon Barnes certain practices by which he, Sample, was prevented from making a proper defence in the action against him in the Circuit Court; but with respect to the testimony adduced to establish such alleged practices, it may be remarked in the

first place, that it does not make them out as they are averred by the bill to have occurred, and in the next place, admitting the averments in the bill, with respect to the practices objected against Barnes after the institution of the suit at law, supposing them to have occurred as stated in the bill, they could have formed no valid obligation upon Barnes to surrender, without consideration or equivalent, his legal rights, nor any dispensation to the appellant, Sample, from his duty to guard his interests in the pending litigation in which he was a party. Barnes had no power to compel a confession of judgment by Ives; and even if such confession had taken place, there could be no propriety in requiring Barnes to substitute for his demand, upon a solvent debtor, a judgment against another who was not solvent.

The appellant, Sample, appears to have been guilty of the grossest neglect and disregard of that diligence which the law requires at the hands of all suitors, and from the consequences of which they cannot be rescued consistently with the rights of others or the order of society. The law, as applicable to such neglect, is plainly declared in the case of Creath *v.* Sims, already quoted, in which this court have said that "a court of equity will never be called into activity to remedy the consequences of laches or neglect, or the want of reasonable diligence. Whenever, therefore, a competent remedy or defence shall have existed at law, the party who may have neglected to use it, will never be permitted here to supply the omission, to the encouragement of useless and expensive litigation, and perhaps to the subversion of justice."

How, then, shall the conduct of the appellant, Sample, be reconciled with the principles by this court so emphatically announced? He not only omits to insist upon his legal defence in the suit at law against him in the Circuit Court, but, after the judgment in that court by default, he executes a delivery bond, with the other appellants as his sureties; thus, after the first judgment against himself by default, the procures a second judgment against himself and his sureties as it were, by confession. This party has, by his conduct, four times recognized the claim against him by Barnes — twice by his indorsement upon the bills drawn on N. and J. Dicks & Co , and on Ford, Markham, & Co.; in the third instance by permitting the judgment by default; and fourthly, by executing the forthcoming bond, which he knew was tantamount to a confession of judgment for the demand.

Upon these grounds, solely, and independently of the original consideration on which the undertaking by Sample was founded and supposing that consideration to have been invalid, if inquired into at the proper time, this appeliant must, by his con-

duct, be regarded as having waived all right of inquiry into that consideration, nay, rather as having repeatedly admitted its validity. To permit him, after so doing, to contradict all that he has repeatedly and formally declared, would be to allow him to falsify his solemn acts, to trifle with the settled rules of law and the practice of the courts, and would lead to endless litigation. We therefore order that the decree of the Circuit Court, dissolving the injunction and dismissing the bill in this case, be, and the same is hereby, affirmed.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Mississippi, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court in this cause be, and the same is hereby, affirmed with costs.