## CRIM *v.* HANDLEY.

1. The court affirms the doctrine announced in *Hendrickson* v. *Hinckley*, 17 How. 443, that a court of equity will not enjoin a judgment at law, unless the proof clearly shows that the defendant had a just defence, of which he could not avail himself at law, or to which, if available, he was prevented from resorting, by fraud or unavoidable accident, unmixed with any fault or neg ligence in himself or his agents.

2. Absence of one of the counsel employed to conduct his defence in a suit at law does not furnish ground for equitable relief, where it appears that the defendant, had he been present at the trial, might have employed other counsel equally competent; nor does the fact that a witness upon whom he relied was so sick during his examination as to impair his recollection of facts within his knowledge. Having failed to ask a postponement or a con tinuance, he cannot go into equity and claim to have the judgment enjoined.

3. Nor will such relief be granted because the record of a prior suit upon which the defendant relied was lost, or could not be found by the clerk of the court. The loss of the record, and an unsuccessful search for it, presented a good cause for a continuance. Proof of its contents was also available under such circumstances as secondary evidence.

APPEAL from the Circuit Court of the United States for the Southern District of Georgia.

Handley, on the 14th of April, 1873, brought suit in the Circuit Court of the United States for the Southern District of Georgia against Crim and Peeples, surviving partners of King, Crim, & Co., on four promissory notes, executed by the firm to Buffington & Co.

The defence was payment. Peeples also pleaded his discharge in bankruptcy.

When the case was called, no motion was made for a continuance. The evidence offered by the defendants was admitted at the trial without objection, no charge to the jury was asked, and there is, consequently, no bill of exceptions.

The defendants offered in evidence sundry receipts showing payments.

Harper, the attorney in whose hands Buffington & Co. had placed these notes, and Crim and Peeples, the defendants, were witnesses, and testified as to the alleged payments.

Upon this evidence the case was submitted, and it resulted in a verdict and a judgment for $3,154.21 against Crim. Peeples was discharged, on the plea of bankruptcy.

Crim then moved for a new trial, on grounds which do not

appear.  The motion was denied.  He then filed his bill for an injunction and a new trial, all the allegations of which, in support of the relief prayed for, were fully answered and denied; and the case was heard in August, 1873, when the injunction was denied.  No decision was made on the demurrer, which was also filed, but the bill was retained, for the purpose of being heard at the next term.

Testimony was taken by Crim to sustain his allegation that the notes had been paid, and the principal witnesses were again he, Peeples, and Harper.

The chief grounds relied on by Crim for the intervention of equity were, first, that a certain record in a proceeding on the equity side of one of the State courts, alleged to have an important bearing on the question of payment, could not be found by the clerk of that court up to the time of trial; second, that Peeples, when testifying in the common-law case, was not in a condition of mind to tell all he knew and to speak truly.  In support of this latter ground, Peeples swears that, two or three days before the trial, he had been seriously ill; had not slept scarcely any for three nights; had taken opium freely; and at the time he testified was in such bad condition that he could not remember the facts in the case.  He swears that in another trial he will testify to sundry payments amounting to $3,251.

Upon a final hearing the bill was dismissed, and Crim appealed to this court.

*Mr. R. F. Lyon* for the appellant.

*Mr. Philip Phillips* and *Mr. W. H. Phillips* for the appellee.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Courts of equity will not enjoin judgments at law, unless the complainant has an equitable defence to the cause of action of which he could not avail himself at law, because it did not amount to a legal defence; or where he had a good defence at law, of which he was prevented from availing himself by fraud or accident, unmixed with negligence of himself or his agents. *Hendrickson* v. *Hinckley*, 17 How. 443.

Where a party has failed to make a proper defence through negligence, a court of equity will not enjoin the judgment; but where it appears that such a defence has been prevented by

fraud or accident, without fault of the losing party, a court of equity may grant relief, if the proofs are satisfactory. *Hungerford* v. *Sigerson*, 20 id. 161.

Sufficient appears to show that goods of great value were owned by the mercantile firm of J. W. Buffington & Co., and that they, on the first day of February, 1866, sold the same to the firm of King, Crim, & Co., William Peeples, one of the old firm, entering into the new firm which made the purchase. Payment of the price was made at the time of the purchase, less $4,591.64, for which the purchasing firm gave to the vendor's four promissory notes, payable to the creditor firm or bearer, on the first days of April, May, June, and July next ensuing, with interest.    Debts of the old firm were still outstanding, for which Peeples, of the new firm, was liable; and for his security the four notes given by the new firm were deposited in the hands of a third person, with the understanding that the depositary was to hold the notes for that purpose, so that, when the debts of the old firm were presented, they might be paid by Peeples or the new firm, and in that event the amounts paid were to be credited on the notes in the hands of the depositary.

Subsisting liabilities of the old firm were presented for payment, and were paid by Peeples, of the new firm; but the record shows that controversy arose respecting the same, and that the depositary of the notes refused to allow the credits to be made on the notes, pursuant to the original understanding. Instead of that, he caused one of the notes to be put in suit to enforce payment of the same.    Pending that suit, the new firm brought a bill in equity against the depositary and the old firm, to compel the respondents to carry the understanding into effect.    What they prayed was, that the payments thus made should be indorsed on those notes, and they also claimed a credit for worthless cotton-seed sold to them when they purchased the stock of goods of the old firm.

Litigation ensued; but, in the view taken of the case, it will not be necessary to enter very fully into those details.    Suits of garnishment were also instituted in behalf of the creditors of the old firm against the depositary of the notes; and during their pendency the notes were placed in the hands of certain attorneys, with directions that the notes be put in suit in the

name of the agent of the creditors prosecuting the suits of garnishment. Pursuant to those directions, the agent, James M. Handley, on the 14th of April, 1873, sued the appellant and Peeples, as surviving partners of the new firm which gave the notes, counting on those notes as indorsee against the makers.

Service was made; and the defendants appeared and set up the following defences : 1. That they never promised. 2. Payment before the suit was instituted. 3. Payment to the payees, and due notice to the indorsee and holder. 4. That the notes were given for a stock of goods, part of which consisted of a lot of cotton-seed warranted sound, which proved to be unsound and worthless. 5. Prior recovery against the defendants to the extent of their liability in the garnishment suits, and the full payment of the amount so recovered. 6. Subsequent sale of the stock of goods to another firm for an amount greatly in excess of what was due on the notes, the purchasers, with the consent of the firm, agreeing to assume and pay what was unpaid on those notes.

Peeples also filed a separate plea, in which he alleged that he had previously been adjudged a bankrupt by the District Court.

Taken as a whole, it must be admitted that the pleadings fully and clearly present every matter in issue between the parties. Both parties appeared on a subsequent day, and they went to trial, the record showing that the verdict as against the appellant was for the plaintiff in the sum of $3,154.21, and in favor of the other defendant, under his plea that he had been duly adjudged a bankrupt. Judgment was accordingly rendered for the plaintiff, and the present appellant filed a motion for new trial. Before the motion came to a hearing, the defendant, with the consent of the plaintiff, filed a statement of the evidence introduced in the case, which was also approved by the presiding justice, as exhibited in the record.

Enough appears in that statement to show that evidence was introduced in support of all the issues presented in the pleadings, and that the error, if any, must have been committed by the jury. For aught that appears to the contrary, it must be assumed that all the evidence offered by the defendant was admitted; and the record does not show that any evidence offered by the plaintiff was admitted to which the defendant

objected. Nothing appears to show any irregularity in the trial; and neither party filed any exceptions to the charge of the court, or to any ruling of the court, in refusing to instruct the jury as requested.

Viewed in the light of these suggestions, it is clear that the record furnishes no ground whatever to suppose that the defendant did not enjoy every right which belongs to a litigant party, without diminution or restriction. Where no exceptions are taken during the trial, the presumption must be that the rulings of the court were correct; and that presumption in this case is confirmed by the fact that no complaint in that regard is made in the statement filed as the foundation of the motion for new trial. By the allegations of the bill of complaint, it appears that such a motion was made and denied before the present bill of complaint was filed, which purports to seek relief for the complainant upon grounds "above and beyond what was considered by the court of law in the former motion."

Prefaced by that statement, the complainant proceeds to state the grounds for the relief, which, as he alleges, exist to support the present application for an injunction and new trial. Briefly stated, they are as follows: 1. That the verdict of the jury is unjust and inequitable, for the reasons that the credits which he claimed were not allowed. · 2. That he was misled at the trial and his defence "demoralized" by the failure of recollection on the part of his principal witness, who knew all the facts required to establish the same; that, when the witness was called to testify, he became confused, and that his recollection deserted him to such an extent that he did not know to what he was testifying; that the forgetfulness and confusion of the witness arose, as the complainant is advised, from severe pain and the effect of opiates previously taken to relieve the painful disease with which he was afflicted; and that the consequent inability of the witness to testify to the facts within his knowledge was a complete surprise to the complainant and his counsel. 3. That one of his counsel unexpectedly failed to be present at the trial. 4. That he was unable to procure, as evidence on the trial of the case, the pleadings, proceedings, and decree in an equity suit previously heard and determined

in the State court, which were material to his defence, and for which he made diligent search without success.

Certain other grounds of relief are also alleged in the bill of complaint, which need not be reproduced, as they do not appear to give much additional weight to the application.

Two of the respondents appeared and filed separate answers. Most or all of the material matters alleged in the bill of complaint are denied in the answers, which renders it unnecessary to enter into any preliminary comparison of the allegations of the former with those of the latter.

Credits to considerable extent must have been allowed, as is obvious from a comparison of the verdict with the aggregate amount of the notes and interest. More was claimed by the defendants than was allowed, and all experience shows that a losing party is seldom satisfied when his demand or set-off is reduced by the tribunal appointed to determine its amount.

Parties in suits at common law, where the value in controversy exceeds $20, are entitled to a trial by jury; but the same amendment to the Constitution provides that no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law. Two modes only were known to the common law for the examination of facts once tried by a jury; to wit, the granting of a new trial by the court where the issue was tried or to which the record was returnable, or by the award of a *venire facias de novo* from the appellate court for some error of law in the proceedings. *Parsons* v. *Bedford*, 3 Pet. 448; 2 Story, Const. (3d ed.) 584; *Insurance Company* v. *Comstock*, 16 Wall. 269.

All suits not of equity or admiralty cognizance are embraced in that provision, and subject to its control. By its terms it is applicable only to common-law suits, and, of course, does not conflict with the rule before stated, that courts of equity may exercise jurisdiction to enjoin a judgment or to grant the injured party a new trial, in a case where the proof is clear, to show that it would be inequitable and against conscience to execute it; as where it appears that the injured party has an equitable defence of which he could not avail himself in the suit at law, or if it appears that the defence could be made at law, but that he was prevented from making it by fraud or

unavoidable accident, unmixed with any fault or negligence in himself or his agents. *Truly* v. *Wanzer*, 5 How. 142 ; 2 Story, Eq. (9th ed.) sect. 887.

Difficulty would attend any attempt to prescribe a rule which will apply in all cases ; but it is safe to affirm that equity may exercise jurisdiction in such a case, where the evidence clearly shows that it would be against conscience to execute the judgment, because the injured party had a just defence of which he could not avail himself in the suit at law, or of which he might have availed himself at law, but was prevented from so doing by fraud or unavoidable accident, unmixed with any fault or negligence in himself or his agents. *Insurance Company* v. *Hodgson*, 7 Cranch, 336.

On the other hand, said Marshall, C. J., it may with equal safety be laid down as a general rule that a defence cannot be set up in equity which has been fully and fairly tried at law, although it may be the opinion of the court that the defence in the suit at law ought to have been sustained. *Walker* v. *Robbins*, 14 How. 585 ; *Creak* v. *Sims*, 5 id. 204 ; *Sample* v. *Barnes*, 14 id. 73.

Where, pending a suit in the Circuit Court against a surety, judgment was recovered against him in a State court for the same cause of action, and he paid the whole amount before judgment was rendered in the Circuit Court, the judgment rendered in the Circuit Court was properly enjoined, it appearing that the surety tendered the defence of antecedent payment *puis darrein continuance*, and that the court refused to admit the defence. *Leggett* v. *Humphreys*, 21 How. 71 ; *Humphreys* v. *Leggett*, 9 id. 313.

Frequent applications to enjoin judgments were made in equity, before the practice of awarding new trials was introduced into the courts of common law. Until the practice of granting new trials in courts of law was introduced, every reason existed why equitable relief should be afforded ; but as the courts of law now exercise that power very liberally, especially in case of fraud or unavoidable accident, a resort to equity is seldom necessary or successful. 3 Lead. Cas. (3d ed.) 190 ; *Railroad* v. *Neal*, 1 Wood's C. C. 353.

Relief in equity may be granted in case of fraud or collusion

but it will not be granted in other cases, unless it clearly appears that to allow the judgment to be executed would be contrary to equity and good conscience, and that the facts which render it inequitable were unavailable as a defence in the action in which the judgment was recovered, without any fault or negligence of the losing party. *Clute* v. *Potter*, 37 Barb. 199; *Burton* v. *Wiley*, 26 Vt. 432 ; *Carrington* v. *Holabird*, 17 Conn. 537 ; Kerr on Inj. 22; *Simpson* v. *Hart*, 1 Johns. Ch. 98.

Absence of one of the counsel employed by the party furnishes no ground for equitable relief in this case, in view of the circumstances, as it does not appear that the party, if he had been present, might not have employed another equally competent to conduct the defence. Nor does the allegation that one of his witnesses was sick during the examination, that it impaired his recollection and rendered him incapable of stating material facts within his knowledge, afford any sufficient support to the present application. Accidents of the kind occasionally occur in the course of trial; but the plain remedy for such an embarrassment is an application to the court to postpone the trial or to continue the case, as the circumstances may require. Applications of the kind, if well founded, are seldom or never refused; but if a party elects to proceed and take his chance of success, he cannot, if the verdict and judgment are against him, go into equity, and claim to have the judgment enjoined. If a witness is too unwell to testify understandingly, the proper remedy for the party is to move for a postponement of the trial; and, if he elects to proceed and is unsuccessful, his only remedy is a motion for new trial to the court where the accident occurred.

Suppose that is so, still it is insisted by the complainant that the allegations of the bill of complaint, that he was unable to procure an exemplified copy of the record in the prior described suit, if sustained by proof, are adequate to show that the judgment here in question should be enjoined ; but there are two answers to that proposition, either of which is sufficient to show that the proposition is not well founded : 1. Because the loss of the record and the inability of the clerk to find it were a good cause for a continuance, if duly presented and supported by an affidavit in due form. 2. Because it was a case where

secondary evidence was properly admissible, the party first proving loss and due unsuccessful search.

Nor is it any proper answer to that suggestion to say that the counsel present could not prove the contents of the record. Both the counsel and party knew at the commencement of the suit that the record in question would be material evidence for the defendant; and, if his counsel was unable to testify as to its contents, the defendant should have attended the trial himself, or have summoned the clerk, or some other person having the requisite knowledge. Accidents of the kind usually find a remedy in an application to the discretion of the court for a postponement of the case, or parol proof of contents, or, in case the trial proceeds and a verdict follows, by a motion for new trial at common law.

Due proof of loss, unsuccessful search, and proof of contents, would have been as available for the defendant as an exemplified copy of the record; and, in the absence of any proof of proper diligence in that regard, it is clear that he shows no ground whatever for equitable interference in his behalf.

Suffice it to say, without remarking upon the other causes assigned why relief should be granted, that they must all be overruled, for some one or more of the reasons given for overruling those already specifically named.      *Decree affirmed.*