RIVERSIDE OIL & REFINING CO. v. DUDLEY et al.

Circuit Court of Appeals, Eighth Circuit.
June 4, 1929.

No. 8059.

H. B. Martin, of Tulsa, Okl., for appellant.

J. D. Lydick, of Oklahoma City, Okl. (Lydick, McPherren & Jordan and Everest, Dudley & Brewer, all of Oklahoma City, Okl., on the brief), for appellees.

Before STONE, Circuit Judge, and FARIS and SYMES, District Judges.

STONE, Circuit Judge. A number of minority stockholders of the Riverside Oil & Refining Company (appellant here), a Delaware corporation operating in Oklahoma, brought an equitable action in the proper state court in Oklahoma against the corpora-

tion, its officers, directors and certain stockholders (including O. O. Owens, vice president and general manager thereof). The basis of that action was the alleged domination and mismanagement of the corporation by Owens to his alleged illegal profit. The reliefs sought were a receiver and recovery from Owens, for the corporation, of certain money of the corporation claimed to have been illegally used by and for his benefit and of certain profits taken by him which were claimed to belong to the corporation. That action resulted in a decree against Owens for something more than $90,000 and the appointment of a receiver. The receiver qualified.

Separate equitable actions have been brought by the corporation and by Owens to restrain enforcement of the above decree. The action by Owens was brought in the Eastern District of Oklahoma and resulted in the sustaining of a motion to dismiss the petition filed by him. The action by the corporation was brought in the Western District of Oklahoma and resulted in dismissal of the petition. Appeals in these two cases were separately argued during the same week. This is the appeal of the corporation.

To this petition, defendants filed answers which included allegations and prayers for affirmative relief. Replies were filed to the affirmative matter in the answers. The case came on for trial and counsel made opening statements and argued questions of law raised by the answers. This record contains the opening statements and the statement, "Hereupon followed legal argument," at the close of the opening statement for plaintiff, and "Thereupon the law was argued to the court, after which the court ruled as follows," at the close of the opening statement for the defendants. No part of the legal argument is set out. However, it is evident from the statement of the trial court that the legal arguments and the determination of the court were based upon that portion of the answers which alleged that the petition did not state a cause of action. Treating such allegations as, in effect, motions to dismiss the complaint, the court sustained such motions.

The order, sustaining the allegations in the answer which attack the sufficiency of the petition, was not followed by an express election of plaintiff to stand upon its petition, which would, in turn, have been followed by a final order of dismissal. In this state of the record, we would be authorized to dismiss this appeal as not being from an appealable final order. However, both parties have treated the order as final and, when the doubtful character of the order was raised by this court during the argument, both parties requested the court to treat the order as final and determine the matter upon the merits. Since there might be some question as to the order and since this case involves receivership of property and should be speedily determined, we will accede to the request.

The matter here is whether the petition stated an equitable cause of action. In determining this matter, we disregard all portions of the answer other than those challenging sufficiency of the petition as well as the opening statements of counsel concerning the proposed proof of facts and confine ourselves to an examination of the petition.

The petition is, necessarily, rather lengthy. It is against eight defendants. One of the defendants is the receiver appointed by the state court and another is the referee acting in that suit. The status of the six other defendants as to being parties to the state court suit does not clearly appear though, inferentially, two of them (Dudley and Copeland) were minority stockholders and plaintiffs therein (paragraph 5 of petition). We summarize the essential allegations as follows:

Defendants J. B. Dudley and Rudy Copeland, conspiring to deprive the majority of the stockholders of appellant of their right to conduct and manage the corporate affairs and to participate in its profits, by false and deceitful representations induced "certain of the other stockholders" to join in a suit in the state court for the purpose of having a receiver appointed. In that suit, it was falsely charged that the officers and directors were conducting the affairs of the corporation fraudulently and corruptly. After commencement of that action, Dudley procured an order referring the matter to John H. Halley (a defendant herein) to hear the evidence and report findings of fact and conclusions of law. In connection with the hearings before the referee, defendants were guilty of "collateral fraud in this, to wit: That the defendant Dudley after said cause had been heard before said referee and while the same was held under advisement by said referee, secretly and clandestinely corresponded with the said defendant Halley to induce the said Halley as such referee to make unfavorable findings of the facts against this plaintiff, and on the 8th day of December, 1921, the said defendant Dudley wrote to the said defendant Halley a letter which the defendant Halley received, in which it was stated that one O. O. Owens,

the manager of this plaintiff, had expended the funds of this plaintiff in the sum of $93,-424.59, in the development of certain leases, the property of the said Owens, and not the property of this plaintiff. That said letter was received by the said Halley and contained further false statements, charging that an audit of the books of plaintiff showed that such expenditures of the company's funds had been made by the said Owens to develop his, the said Owens private property. That letter and communication was false, misleading and was intended by the defendant Dudley to influence the said defendant Halley in the determination of the facts of said cause. That said communication was without the knowledge of this plaintiff and that no opportunity was afforded the plaintiff and its officers to defend against the charges and statements contained in said letters and that the same did influence the aforesaid referee, the defendant Halley, in his determination of the facts before him."

The letter is as follows:

"Dudley & Shartel, Lawyers.
"Terminal Building, Oklahoma City, Okla.
"December 8th, 1921.

"Mr. John H. Halley, Oklahoma City, Okla. Dear Sir:. In re Lynch et al. vs. Riverside et al. Our copy of the audit is herewith enclosed. We have not received a completed copy of the record. The record we had during the argument, last Saturday, was made for you and we thought it was delivered to you. Evidently Twyford took it away. Fullenwider is in El Reno and we can't get ours put into final form until he returns, which will be tomorrow or next day.

"According to the audit, Owens expended $93,424.59 of the company's funds on the Kellyville or Jackson Scott lease. These items appear in the audit as follows:

| | |
|---|---:|
| Equipment Kellyville lease, Schedule 9.... | $37,968 75 |
| The lease itself, Exhibit G, Title; Capital Assets, Jackson Scott lease.............. | 8,528 75 |
| Andy Scott lease............................ | 100 00 |
| Drilling expenses on this lease, Exhibit F, cost of drilling well No. 1 Jackson Scott lease ...................................... | 19,784 50 |
| Amount paid Frank Barnes in connection with drilling this well or the amount paid for his benefit, Schedule 7.......... | 13,116 52 |
| And as to R. C. Wilson, Schedule 7........ | 13,926 07 |
| Total ..................................... | $93,424 59 |

"The expenses for drayage, labor, salary and other expenses are not itemized as to this particular lease, neither does this audit cover anything expended for the second well. This matter will have to be left open for the receiver to figure out.

"I desire to withdraw the requested findings for the purpose of making some corrections and we will refile them to-day.
"Yours truly,
"JBD/NRL. [Signed] J. B. Dudley."

The evidence at the hearing not only "entirely failed" to show any fraud or mismanagement of the corporation but "on the contrary showed" efficient and faithful administration of the corporate affairs by the officers and directors thereof. All of the evidence, "without contradiction" showed no wrongdoing on the part of Owens and no liability from him to the corporation as to any of the matters so found by the referee and the trial court. To the contrary, it is the fact that all dealings of Owens with the corporation were creditable, honest and for the benefit of the corporation. That the suggestions and statements contained in the above letter were included in the findings of the referee and this letter, so gotten to the referee, was the only possible basis for the findings resulting in the receivership.

The report of the referee was approved by the trial court. An appeal was taken to the state Supreme Court with supersedeas. An opinion was there handed down (on February 12, 1924) affirming in part and reversing in part (including that portion of the decree appointing a receiver). A rehearing was granted (July 7, 1925) on application of the plaintiffs therein and a second opinion handed down which affirmed the decree, including the appointment of a receiver. 243 Pac. 967. Rehearing on the second opinion was denied this plaintiff (on December 14, 1925).

The receiver has qualified and will take possession unless prevented. Wherefore, it is prayed that defendants be enjoined from interfering with the possession of plaintiff, from further prosecuting the action in the state court and from "attempting to enforce said pretended judgment or any part thereof."

In short, the petition seeks to have enjoined any enforcement of the decree of a state court which has been affirmed by the highest court of the state. Such relief is sought because there was no evidence to sustain the decree of the trial court and that such decree was induced by and rests solely upon a letter secretly and clandestinely written to the referee by whom the case was heard in the trial court.

The court from which this appeal is brought determined this petition to be vitally defective because it failed to "contain allegations showing the reason why the mat-

ters complained of were not presented in the state court."

The proposition of law upon which appellant relies is thus stated by counsel:

"A federal court of equity will, by its writ of injunction, deprive one of the benefit of a judgment obtained in a state court under circumstances where its enforcement will be contrary to the recognized principles of equity and the standards of good conscience."

This statement is, broadly, true, however, it is necessary to ascertain what are "the recognized principles of equity" which are applicable to the situation here. The pertinent and controlling principles of equity may be stated thus: A judgment may be enjoined for fraud, accident or mistake (Truly v. Wanzer, 5 How. 141, 142, 12 L. Ed. 88; Davis v. Tileston, 6 How. 114, 12 L. Ed. 366; Humphreys v. Leggett, 9 How. 297, 13 L. Ed. 145; Hendrickson v. Hinckley, 17 How. 443, 15 L. Ed. 123; Crim v. Handley, 94 U. S. 652, 24 L. Ed. 216; Brown v. County of Buena Vista, 95 U. S. 157, 24 L. Ed. 422; Phillips v. Negley, 117 U. S. 665, 675, 6 S. Ct. 901, 29 L. Ed. 1013; Knox County v. Harshman, 133 U. S. 152, 10 S. Ct. 257, 33 L. Ed. 586; Simon v. Southern R. Co., 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492); but equity requires "diligence" in such matters and this means that the facts constituting fraud or accident were not known in time to be presented or could not have been presented in the state court trial (Truly v. Wanzer, 5 How. 141, 142, 12 L. Ed. 88; Sample v. Barnes, 14 How. 70, 14 L. Ed. 330; Walker v. Robbins, 14 How. 584, 14 L. Ed. 552; Hendrickson v. Hinckley, 17 How. 443, 445, 15 L. Ed. 123; Hungerford v. Sigerson, 20 How. 156, 15 L. Ed. 869; Crim v. Handley, 94 U. S. 652, 24 L. Ed. 216; Brown v. County of Buena Vista, 95 U. S. 157, 24 L. Ed. 422; Cragin v. Lovell, 109 U. S. 194, 3 S. Ct. 132, 27 L. Ed. 903; Johnson v. Waters, 111 U. S. 640, 669, 4 S. Ct. 619, 28 L. Ed. 547; Phillips v. Negley, 117 U. S. 665, 675, 6 S. Ct. 901, 29 L. Ed. 1013; Richards v. Mackall, 124 U. S. 183, 8 S. Ct. 437, 31 L. Ed. 396; Knox County v. Harshman, 133 U. S. 152, 154, 10 S. Ct. 257, 33 L. Ed. 586; Marshall v. Holmes, 141 U. S. 589, 600, 12 S. Ct. 62, 35 L. Ed. 870; Pickford v. Talbott, 225 U. S. 651, 32 S. Ct. 687, 56 L. Ed. 1240); the bill of complaint must contain all essential allegations and one such necessary allegation is want of knowledge in time for the matter to be available in the state court (Cragin v. Lovell, 109 U. S. 194, 3 S. Ct. 132, 27 L. Ed. 903), such omission can-

not be supplied by proof of facts not pleaded (Harrison v. Nixon, 9 Pet. 483, 9 L. Ed. 201), and the court will refuse injunctive relief where there is such omission in allegations even though no demurrer be filed to such insufficient complaint (Richards v. Mackall, 124 U. S. 183, 184, 8 S. Ct. 437, 31 L. Ed. 396).

The rule was early stated in Truly v. Wanzer, 5 How. 141, 142 (12 L. Ed. 88), as follows: "It may be stated as a general principle, with regard to injunctions after a judgment at law, that any fact which proves it to be against conscience to execute such judgment, and of which the party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will authorize a court of equity to interfere by injunction to restrain the adverse party from availing himself of such judgment."

Also, in Hungerford v. Sigerson, 20 How. 156, 161 (15 L. Ed. 869), where it was said: "Where a party has failed to make a proper defense at law through negligence, equity will not aid him. If by accident or fraud such defense has been prevented, a court of equity may grant relief."

Also, in Creath v. Sims, 5 How. 192, 204 (12 L. Ed. 111), "Whenever, therefore, a competent remedy or defense shall have existed at law, the party who may have neglected to use it will never be permitted here to supply the omission, to the encouragement of useless and expensive litigation, and perhaps to the subversion of justice."

Also, there is a very clear discussion of the principle by Mr. Justice Miller in United States v. Throckmorton, 98 U. S. 61, beginning at page 64, 25 L. Ed. 93.

Counsel for both parties place reliance upon Wells Fargo & Co. v. Taylor, 254 U. S. 175, 41 S. Ct. 93, 65 L. Ed. 205. The basis of that decision was that the appellant was not a party to the action wherein the judgment had been procured and could not be heard therein (see page 189 [41 S. Ct. 93]). No such situation is here, therefore, that case is not directly apposite.

Applying the above equitable principles, we find the following: The complaint alleges that there was no evidence upon which to base the decree and such rested upon the above letter written without the knowledge of the appellant, "and that no opportunity was afforded the plaintiff and its officers to defend against the charges and statements" contained therein. This letter was written to

the master. It is not alleged that it was ever seen by or had any influence upon the trial court or the Supreme Court. There is no allegation when knowledge of such letter came to appellant. These were essential facts in stating a cause of action. The complaint was fatally defective because of such omission. Therefore the court properly dismissed the complaint.

There is another reason why this complaint was fatally defective. The basis of this complaint is the above letter from Dudley to the referee. The harm complained of is the appointment of a receiver. This letter deals entirely with the *amounts* spent by Owens on the two leases. These amounts were pertinent only in connection with the amount of recovery from Owens. They had nothing to do with the question of whether a receiver should be appointed or not. That question depended upon whether Owens dominated the company and had been using its money (whatever the amount) for his own purposes. The amount of the expenditures had nothing to do with whether they were rightfully or wrongfully made. Therefore, this letter could not possibly have affected the referee in his determination of the matter of receivership—which is the only thing this appellant is complaining of and seeks relief from in this suit.

The decree is affirmed.