## Case No. 11,205.

### PLANT et al. v. GUNN et al.

[2 Woods, 372.] [1]

Circuit Court, S. D. Georgia.    April Term. 1874. [2]

DURESS—CONTRACTS—THREATS OF CRIMINAL PROSECUTION — WHAT IS A JUDGMENT — RECORD — CODE OF GEORGIA — EVIDENCE OF VERDICT —LIEN.

1. A contract will not be avoided on account of duress by imprisonment, unless the imprisonment was unlawful, and the contract was made during the imprisonment, and in consideration of release therefrom.

[Cited in Wolf v. Troxell's Estate, 94 Mich. 576, 54 N. W. 384; Sanford v. Sornborger, 26 Neb. 306, 41 N. W. 1105.]

2. Under the Code of Georgia, the threat of a criminal prosecution is not such duress as would avoid a contract.

3. Where A. is justly indebted to B., and B. threatens A. with a criminal prosecution if A. does not secure the debt, which, in justice. A. ought to do, and A. gives a mortgage, the mortgage is not void on the ground that it was executed to compound a felony.

4. A judgment is the decision or sentence of the law, pronounced by a court and entered upon its records.

5. The record of a judgment is notice only of what it contains.

6. The Code of Georgia and the practice of the courts of the state require the proceedings and judgments of the courts to be entered upon the minutes, which are the authentic record of what is done by the courts.

7. Where the only evidence of a verdict and judgment was the indorsement thereof by the plaintiffs' attorney upon the declaration and the words "Nov. T., 1866, verdict," on the bench-docket: Held, that this was not such a judgment as constituted a lien upon the defendants' prop-

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]
[2] [Reversed in 94 U. S. 664.]

erty, and a subsequent order of the court entering judgment nunc pro tunc would not give the judgment a lien upon the property of defendant, superior to a mortgage executed by him prior to the nunc pro tunc order.

[Cited in Charles Green's Son v. Salas, 31 Fed. 108.]

[Cited in Bode v. Trimmer, 82 Cal. 517, 23 Pac. 187.]

In equity. Submitted for final decree upon pleadings and evidence.

Clifford Anderson and W. U. Garrard, for complainants.

A. R. Lawton and C. N. West, for defendants.

Before WOODS, Circuit Judge, and ERSKINE, District Judge.

WOODS, Circuit Judge. In the year 1869, a firm composed of James H. Woolfolk and two other partners was adjudicated bankrupt, and Joseph E. Murray was appointed trustee of the bankrupts' estate. Some time thereafter, certain real estate, the individual property of James H. Woolfolk, was sold by the trustee for the sum of $5,834, and the proceeds were held by the bankrupt court, subject to its order for proper distribution. This fund is now claimed by the complainants on the one hand, and by the defendant, Daniel F. Gunn, as guardian, on the other. The prayer of the bill is that the fund may be applied to the payment of complainants' judgment. The claim of Gunn is based upon a judgment which he says he recovered at the November term, 1866, of the Bibb county superior court, for $11,212, against Thomas J. Woolfolk and the said James H. Woolfolk as principals, and John W. Woolfolk as surety. The claim of the complainants is based upon a mortgage executed by James H. Woolfolk to them on the 7th day of December, 1868, upon the lands sold by Murray, to secure certain debts due from the firm, of which James H. Woolfolk was a member. A judgment of foreclosure was obtained on this mortgage at the October term, 1869, of the Bibb superior court, against James H. Woolfolk for $4,963.

A judgment of a court of record in Georgia is a lien upon all the real and personal property of the judgment debtor within the state, and if the defendant Gunn recovered a valid judgment against James H. Woolfolk in 1866, it became from its date a lien upon all the real estate of which Woolfolk was then seized, among which was the land afterwards mortgaged to the complainants. The complainants, however, claim that their lien is the older and better one, although apparently subsequent in point of time, because the judgment of Gunn was not, as they say, a valid judgment at the time it purports to have been rendered, nor until after the execution of their mortgage. This claim is based upon the following facts: At the November term, 1866, of the Bibb superior court, at which Gunn claims to have recovered his judgment against James H. Woolfolk and others, no verdict or judgment was entered upon the minutes of the court, nor at any subsequent time until the April term, 1871, of the same court, when an order was made that the verdict, which the court at that time found was rendered at the November term, 1866, be entered upon the minutes. And at the same term, it appearing that judgment for the interest found by the verdict had not been taken, the court entered judgment for the interest, nunc pro tunc. The only evidence of any verdict or judgment in the case of Gunn v. James H. Woolfolk and others, at the November term, 1866, is the verdict of the jury indorsed upon the declaration, and a judgment for the principal sum due, also written upon the back of the declaration by the plaintiff's attorney and signed by him. There is also an entry on the bench docket in the judge's handwriting, immediately opposite the case of Gunn v. Woolfolk and others, of these words: "Nov. T., 1866, verdict." According to the practice in Georgia, courts of record, such as the Bibb superior court, are required to keep minutes of their proceedings, in which must be entered all verdicts of juries, and judgments, decrees and other proceedings of the court. These minutes are the authentic record of what transpires in or is done by the court.

There is no entry to be found upon the minutes of the Bibb county superior court, of any verdict or judgment, or of any other proceeding whatever in the case of Gunn v. James H. Woolfolk and others, until the April term, 1871, when this entry appears: "It appearing to the court that the plaintiff failed to enter his judgment for the interest as contemplated by the verdict, it is therefore ordered, upon motion of plaintiff's counsel, that plaintiff have leave to amend said judgment, so far as the interest is concerned, nunc pro tunc." At the same term, it being made to appear to the court, from the bench docket and original papers, that a verdict was rendered by the jury in the case at the November term, 1866, and not entered upon the minutes, the court ordered the verdict to be entered, nunc pro tunc. At a subsequent day of the same term a formal judgment was rendered nunc pro tunc, for interest on the said sum of $11,212.38, from the 14th day of April, 1866, until paid, "this judgment for interest to take effect now for then." It is not pretended that any judgment for interest had ever been in fact rendered before the April term, 1871, nor do the minutes of the court show that any judgment whatever had ever been rendered for the principal sum, nor do they show any judgment nunc pro tunc for such principal sum.

The defendant Gunn claims that before the execution of the mortgage to complainants by James H. Woolfolk, they had notice of his judgment against Woolfolk and others,

which he claims was rendered at the November term, 1866. The evidence upon this point is as follows: James H. Woolfolk testifies, that at the time of giving the mortgage, he told Plant, the complainant, that he, Woolfolk, was defendant in a judgment in favor of Gunn, against himself and John W. Woolfolk as sureties and Thomas J. Woolfolk, principal. Thomas J. Woolfolk testifies, that he was present at the execution of the mortgage to Increase C. Plant and others. Plant asked the witness whether there were any incumbrances upon the property about to be mortgaged, and witness told him none, except a judgment in favor of Gunn for an old debt against Thomas J. Woolfolk, principal, and James H. and John W. Woolfolk, sureties. The defendant Gunn attacks the mortgage of complainants, and asserts that it was obtained either by duress or for the compounding of a felony.

The facts upon this branch of the case are these: The firm of Woolfolk, Walker & Co., in which James H. Woolfolk was a partner, held in their warehouse a quantity of cotton, which was pledged to secure a debt due from Woolfolk, Walker & Co., to Plant & Co., for money advanced by them upon said cotton. Plant & Co. held the warehouse receipts of Woolfolk & Co. for the cotton. The latter firm appropriated the cotton, and were not able to produce it upon the demand of Plant & Co. I. C. Plant thereupon said to James H. Woolfolk, that if he did not pay the debt due from Woolfolk, Walker & Co., to Plant & Co., he would commence a criminal prosecution under the law of Georgia, for misapplying the cotton left with them in trust; that he would send him to the penitentiary if he did not secure the debt by mortgage or otherwise. The result was that James H. Woolfolk gave the mortgage to Plant & Co., to secure their debt. James H. Woolfolk was actually arrested, whether on a civil or criminal process does not appear, and taken before a magistrate and threatened with a criminal prosecution, for having obtained money upon cotton receipts after the cotton had been sold. There is no evidence that the mortgage was executed while James H. Woolfolk was in arrest, but Woolfolk testifies that he gave it on account of the threats of I. C. Plant, above stated.

These facts present the only question which, in the view we take of the case, it is necessary to pass upon. These questions are: (1) Was the mortgage executed by James H. Woolfolk to Plant & Co. void, because given under duress, or because the consideration therefor was the compounding a criminal prosecution; and, (2) if the said mortgage is not void, is it prior in date and equity to the judgment of the defendant Gunn? Of these in their order. Was the mortgage obtained by duress? By duress is meant, "an actual or threatened violence or restraint of a man's person, contrary to law, to compel him to enter into a contract

or to discharge one." 1 Bouv. Inst. 226. "If I be arrested upon good cause, and being in prison or under arrest, I make an obligation feoffment or any other deed to him at whose suit I am arrested, for my enlargement, and to make him satisfaction, this shall not be said to be by duress, but is good and shall bind me." 1 Shep. Touch. 62. If a man be illegally deprived of his liberty until he sign and seal a bond, he may allege this duress and avoid the bond. But if a man be legally imprisoned, and either to procure his discharge or on any other fair account, seal a bond or a deed, this is not by duress of imprisonment, and he is not at liberty to avoid it. 2 Co. Inst. 482; Watkins v. Baird, 6 Mass. 506.

The testimony in this case shows no actual or threatened violence to the person, nor any illegal imprisonment to obtain release from which the mortgage was executed. In fact, the testimony does not show that there was any imprisonment, legal or illegal, at the time of the execution of the mortgage, or that the mortgage was executed in pursuance of a promise to execute it on condition of release from imprisonment. There is nothing in the record that in the slightest degree tends to establish the fact of duress, as defined by the common law. "Duress," as defined by the Code of Georgia (section 2637), "consists in any illegal imprisonment or legal imprisonment used for an illegal purpose, or threats of bodily or other harm, or other means amounting to or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will." There was no imprisonment, legal or illegal, in this case, which was used to coerce the execution of the mortgage. There were no threats of bodily or other harm. Was a threatened criminal prosecution such "other means," mentioned in the Code, as would amount to duress? The supreme court of Georgia, in the case of Russell v. McCarty, 45 Ga. 197, in construing section 2637 of the Code, say it is not. We are of opinion, therefore, that neither by the common law nor the statute law of Georgia was there any duress in this case.

Was the note given for the compounding of a felony? In our judgment the evidence utterly fails to establish this position. There is no evidence that a criminal prosecution was commenced. The arrest spoken of by James H. Woolfolk may have been on a civil process. The proof simply goes to this extent, that Plant threatened Woolfolk that he would prosecute him and send him to the penitentiary if he did not pay or secure the debt due to Plant & Co. To avoid an obligation on the ground that it was given for compounding a felony, it must appear that the compounding of the felony was the consideration of the obligation. Such is not the case here. The consideration of the mortgage was a bona fide debt due from Woolfolk and his partners to Plant & Co. It was the duty of Woolfolk, under the circumstances, to pay or secure this

debt. A threat of a criminal prosecution, unless the mortgage were given, does not compound the offense. Besides, it appears from the evidence of James H. Woolfolk, that he had been guilty of no criminal offense, that the cotton had been disposed of by his partners in his absence and without his knowledge. If this be true, and it is uncontradicted, there was no felony to compound. We are of opinion, therefore, that the mortgage to complainants was a valid mortgage.

It remains to consider, which was the older and better lien upon the property which produced the fund in court about which this controversy has arisen. This will depend upon the date when the judgment of Gunn is to have effect, as to persons not parties to it. A judgment is the decision or sentence of the law upon facts found or admitted by the parties or upon their default in the course of a suit. Tidd, Prac. 930. But a bare decision of a court is not a judgment; there must be a formal order entered upon it. Boker v. Bronson [Case No. 1,606]. A judgment is, therefore, the decision or sentence of the law pronounced by a court and entered upon its dockets, minutes or records. The judgment of a court can only be shown by its records. Where there is no record there is no judgment.

What constitutes the record of a court according to the law and practice of Georgia? By the Code of Georgia (section 267) it is made the duty of the clerk to attend all sessions of the court, and keep fair and regular minutes of its proceedings from day to day, including a transcript of the judge's entries on his docket, when not more fully shown in a book kept for that purpose. All proceedings of the court, even continuances, should be placed upon the minutes. Brady v. Little, 21 Ga. 135. "The entry on the bench docket, as we have repeatedly held, is not the proper evidence as to what has been done or adjudicated by the court." Harwell v. Armstrong, 11 Ga. 330. In the case of Lea v. Yates, 40 Ga. 56, the supreme court of this state held: "That a confession of judgment for a sum of $——, with interest and costs of suit, would not sustain a judgment entered up for a specified sum; that such a judgment was no lien on the property of the defendants, and a subsequent order of the court amending the confession by filling the blank will not create a lien on the property purchased from the defendant, bona fide, prior to such order. The record was only notice of what it contained, and was not notice that there was any legal judgment against the defendants or any lien upon their property." Under such a practice, there is no room left for doubt, that the records of the Bibb superior court contained no evidence of the judgment of Gunn until more than two years after the mortgage to complainants had been executed. As to third parties, there was no judgment until the nunc pro tunc order directing an entry upon the minutes.

The memorandum of a judgment which the attorneys for Gunn indorsed upon the declaration at the November term, 1866, was only for the principal sum due. There is no claim that any judgment for interest was rendered at that time. Down to this day, so far as the record shows, there has never been a judgment entered upon the minutes of the court, either by nunc pro tunc order or in any other manner for the principal sum claimed to be due Gunn. The only judgment ordered to be entered nunc pro tunc was a judgment for interest, and this was entered for the first time at the April term, 1871. It cannot be said, that what Woolfolk told Plant about the judgment against himself can make a judgment when there was none. Suppose Plant had gone to the record to find the date and amount of the judgment of which Woolfolk spoke. The minutes of the court and judgment docket would have shown that no such judgment existed. He cannot be charged with notice of anything more than the records of the court revealed. All that he could have learned, even by reading every paper in the case, would be that the jury had rendered a verdict which had never been entered on the minutes of the court, and upon which the court had never pronounced any judgment. Such a record as that is notice of lis pendens and nothing more. The subsequent action of the court, in ordering the verdict and judgment to be entered upon the minutes, could not affect the rights of intermediate incumbrancers. It would avail, at most, as between the parties to the judgment.

We think, therefore, that the mortgage of the complainants and the judgment recovered thereon is valid and binding, and that it constitutes a lien upon the fund in court, the proceeds of the mortgaged premises, superior to the lien of the judgment recovered by defendant Gunn.

[NOTE. On appeal to the supreme court, the decree of this court was reversed. 94 U. S. 664. Subsequently complainants amended their bill, and it was submitted for final decree upon pleadings and evidence. The bill was dismissed. 7 Fed. 751.]