## PLANT and others *v.* GUNN and others.

*(Circuit Court, S. D. Georgia, W. D.    May 13, 1881.*

**1. JUDGMENTS—NOTICE—CODE OF GEORGIA, § 267.**

The object of the book of complete record, which the clerk of each superior court in Georgia is required to keep by paragraph 6, § 267, of the Code of Georgia, for " the record of all the proceedings in all civil cases, within six months after the final determination thereof," is not to give notice of liens by judgment. The failure of the clerk to keep such book, or to record a judgment therein, does not affect the constructive notice conveyed by a judgment regularly entered, as required by law, on the declaration in the case, where the execution issued thereon is regularly docketed for the full amount of

the judgment in the execution docket, which is the book kept and used in Georgia for the ascertainment of judgment liens.

2. JUDGMENT—AMENDMENT—MORTGAGE.

Where a verdict was taken at the November term, 1866, of the superior court, for $11,212 principal, "with interest from April 14, 1860," and at the same term a judgment entered thereon for $11,212 principal, and "for —— dollars and —— cents for interest to ——," and where the execution docket showed the amount both of principal and interest due on such judgment, and where a *nunc pro tunc* judgment for the interest was afterwards rendered at the April term, 1871, of the court, *held*, that such judgment for interest had a valid lien from the date of the original judgment, and was superior to the lien of a mortgage taken in 1868 (beteen the dates of the original and amended judgment) by a creditor to secure an antecedent debt.

3. EQUITABLE ELECTION—JUDGMENT—MORTGAGE.

The doctrine of compelling a creditor who has a lien on two funds to resort to that on which another creditor has no lien, is only applicable where the two funds are equally accessible to the creditor having the lien on both. Therefore, a judgment creditor who has a lien on a fund in court arising from the sale of certain real estate of the debtor, a bankrupt, which has been sold by a committee of creditors of the bankrupt's estate for one-third cash, one-third due in one year from date of sale, and one-third due in two years from that date, will not be decreed to await the collection of these notes, but is entitled to a fund already in court, arising from the sale of land on which another creditor had a mortgage lien, although the mortgage has no lien except upon that fund.

In Equity.  Submitted for final decree upon pleadings and evidence.

*Lanier & Anderson,* for complainants.

*Hill & Harris* and *Bacon & Rutherford,* for defendants.

This case has been previously reported in 2 Woods, 372, and 94 U. S. 664. The facts necessary to an understanding of the decision in this case, now reported, are as follows:

At the November term, 1866, of the superior court of Bibb county, Georgia, Daniel F. Gunn obtained a verdict against Thomas J. Woolfolk, James H. Woolfolk, and John W. Woolfolk, security, of which the following is a copy:

"We, the jury, find for the plaintiff against the defendants the sum of $11,212, with interest from April 14, 1860."

This verdict was entered on the declaration in the case, and on the same day N. H. Bass, the plaintiff's attorney, entered up a judgment on the declaration, according to the

law and practice in Georgia. The following is a copy of the judgment:

BIBB SUPERIOR COURT,
November term, 1866.

Principal, $11,212. Interest to ———.

Whereupon it is considered and adjudged by the court that the plaintiff do recover of the defendants, Thomas J. Woolfolk, James H. Woolfolk, and John W. Woolfolk, the sum of $11,212 for his principal debt, and ——— dollars and ——— cents for interest to ———, and the sum of ——— dollars and ——— cents for costs of suit, to be taxed by the clerk; and the defendant be in mercy, etc.

N. H. BASS, Plaintiff's Attorney.

At the same term an execution was issued by the clerk in favor of the plaintiff against the defendants, in which the principal and the interest were both set out, and the following entry was made on the "execution docket:"

N. H. Bass. No. 1. *Daniel F. Gunn, Guardian,* v. *Thomas J. Woolfolk, James H. Woolfolk, and John W. Woolfolk, security.** Principal, $11,212; interest from fourteenth of April, 1860; costs, $20.70.

At the April term, 1871, of said court, the plaintiff obtained leave of the court to amend said judgment so as to include interest, and a judgment was entered up by the plaintiff's attorney specifying the amount of interest in dollars, and cents; "this judgment for interest to take effect now for then."

Between the date of the original verdict, judgment, and execution, in November, 1866, and the date of the amended judgment for interest, James H. Woolfolk, one of the defendants, on the seventh day of December, 1868, gave to I. C. Plant & Son a mortgage to secure a debt due to them by the firm of Woolfolk, Walker & Co., of which James H. Woolfolk was a member. The consideration of the mortgage was not any credit extended by I. C. Plant & Son at the time, but the securing of an antecedent debt. The mortgage embraced lands of the defendant in execution, James H. Woolfolk, upon which, by the laws of Georgia, the judgment of Daniel F. Gunn, if valid, was a lien from its date. In 1869

———
*This transcript was not in the record when the case was heard before the circuit judge at the April term, 1874, and the decision then rendered was partly based upon the absence of this evidence, (see 2 Woods, 379;) the "judgment docket" there referred to being the "execution docket" which the clerk of the superior court is required to keep by the law of Georgia.

the firm of Woolfolk, Walker & Co., composed of James H. Woolfolk and two other partners, was adjudicated bankrupt; and the estate of James H. Woolfolk was managed by a committee of creditors and a trustee under section 43 of the bankrupt act. I. C. Plant & Son foreclosed their mortgage and levied the mortgage execution upon the mortgaged premises. Pending the levy, it was agreed between Plant & Son and the trustee in bankruptcy that the property should be sold under the mortgage execution and the proceeds held for distribution in the bankrupt court. The property was sold for $5,834.

The only claim in the bankrupt court which disputed the right of Plant & Son to said proceeds was the judgment of D. F. Gunn against said James H. Woolfolk and others, which had been proved as such in the bankrupt court. This judgment, if valid, was the oldest lien on all the property, real and personal, of James H. Woolfolk. To determine the question of priority between said judgment and mortgage, (and also for the purpose of obtaining an injunction, which is not now a material part of the case,) I. C. Plant & Son filed their bill in the circuit court, alleging the priority of their mortgage lien, because neither the verdict nor judgment of said Daniel F. Gunn had ever been entered on the minutes of the court in which it was rendered. The bill also alleged that James H. Woolfolk was the reputed owner of a large tract of land in Jones county, consisting of 2,100 acres, and which was worth largely more than the entire amount due on the judgment in favor of Gunn, both principal and interest, and which was subject to the lien of said judgment equally with the land on which Plant & Son held a mortgage, and that Gunn should be compelled in equity to enforce his judgment against the land on which Plant & Son had no lien.

The answer of the defendants set up the priority of the judgment in favor of Gunn; and also set up that the land in Jones county, consisting of 2,100 acres, had been conveyed by James H. Woolfolk to his brother Lowell C. Woolfolk, who claimed the title and possession of the same, and that it could only be made subject to the judgment after a litiga-

tion with Lowell C. Woolfolk; and that for this reason such land was not equally accessible to the lien of petitioners' judgment.

After the decision of the supreme court was rendered, (94 U. S. 654,) complainants amended their bill, alleging that in the argument of the case before the circuit court it was treated as an undisputed fact that the judgment in favor of Gunn had never been "recorded as required by law," although the transcript of the record from Bibb superior court offered in evidence before the circuit court, and in the record before the supreme court, contained, *inter alia*, the judgment, followed by a certificate from the clerk of the superior court that the same "appeared from the records and files of his office," and that in fact said judgment never had been entered on the book which the clerk of the superior court is required (by section 267, ¶ 6, of the Code of Georgia) to keep for the "record of all the proceedings in all civil cases within six months after the final determination thereof."

The amendment further alleged that in the year 1880 the committee of creditors in charge of the estate of James H. Woolfolk had recovered from Lowell C. Woolfolk the large tract of land in Jones county conveyed to him by James H. Woolfolk, and had sold the same as assets of the bankrupt's estate for the sum of $15,700, and that this fund, together with the sum of $1,000 already in the hands of the trustee from other sources, was sufficient to pay off the entire judgment in favor of Gunn, and that this judgment ought in equity to be paid out of that fund upon which it had a lien, and leave to complainants' mortgage the fund upon which only it had a lien. The amendment also alleged that large payments had been made on the execution and judgment in favor of Gunn, which should be applied solely in reduction of the principal; such payments having been made after the date of complainant's mortgage, and the mortgage having been taken at a time when there was no subsisting judgment (if any valid judgment at all) for interest; that the amended judgment for interest was not taken until 1871, and could not relate back to the original judgment in 1866, so as to affect com-

plainants' rights under their mortgage taken in 1868. The payments made were as follows:

| | | | | | | | |
|---|---|---|---|---|---|---|---:|
| December 2, 1868, | - | - | - | - | - | - | $ 600 |
| January 20, 1869, | - | - | - | - | - | - | 2,200 |
| February 1, 1869, | - | - | - | - | - | - | 2,400 |
| February 15, 1869, | - | - | - | - | - | - | 1,500 |
| Total, | - | - | - | - | - | - | $6,700 |

The defendants, by their pleadings and evidence, made the following defences to the matters set up in the amendment:

(1) They submitted, by demurrer, that so much of said amendment as related to the non-record of the judgment, and to the validity and effect of the judgment for interest, was *res adjudicata*; that these questions were involved in the issue determined by the supreme court, who heard the case on appeal from the circuit court; and that by their decision the legality and validity of the verdict and judgment in favor of Gunn had been expressly sustained.

(2) They denied that, on the argument before the circuit court, it was admitted that the judgment in favor of Gunn had never been "recorded as required by law." It was admitted that the judgment had never been entered on the minutes of the court, but this was not required by the law or practice in Georgia, as determined by the supreme court of Georgia in the late case of *Powell* v. *Perry*, at the September term, 1879, rendered since the hearing in the circuit court. But the judgment was entered by the plaintiff's attorney on the back of the declaration, and this is the only entry required by the law of Georgia; that the judgment was, by the law of Georgia, (50 Ga. 378,) a record from its date and notice to the world.

(3) The answer admitted that the judgment had not been recorded on the "complete record" of all the proceedings in all civil cases; but submitted that this could in no way affect the validity of the judgment, nor its operation as constructive notice, because the object of such book was not to give notice of judgment liens, but only to preserve the evidence of proceedings in the various civil cases of law, equity, attachment, garnishment, claim, illegality, etc., determined in

the courts. The book intended by the law of Georgia to give notice of judgment liens is the execution docket, and the amount due on the execution issued upon this judgment was regularly entered by the clerk on that docket at the November term, 1866, during which the execution was issued. The book of complete records has, in fact, fallen into disuse in many of the counties in Georgia; and no such book has been kept in Bibb county since 1856.

(4) The answer admitted that the tract of land in Jones county had been recovered from Lowell C. Woolfolk and condemned as assets of the estate of James H. Woolfolk; but this was done after a long litigation, lasting from 1873 to 1880. The committee of creditors had sold the land at the price of $15,700, but the purchase money was payable in three instalments,—one-third cash, one-third due in one year from date of sale, (November, 1880,) and one-third due in two years from that date; that only $3,100 had in fact been collected and deposited in the registry of the court; that the proper distribution of this fund would yet have to be submitted to and passed upon by the bankrupt court, hence this fund was not equally accessible to the lien of the judgment with the fund raised from the sale of the mortgaged premises.

It was shown by the testimony of Albert B. Ross, clerk of the superior court of the county of Bibb, and of several members of the bar of long practice and experience, that the universal custom was to resort to the execution docket for the ascertainment of judgment liens, and if any further information was needed than was disclosed by that docket, to resort to the judgment entered on the declaration and which remained of file in the office of the clerk of the court.

Upon these facts the following rulings were made orally by Mr. Justice WILLIAM B. WOODS:*

1. The decision in this case, reported in 94 U. S. 664, is an adjudication that the judgment in favor of D. F. Gunn, at the November term, 1866, of Bibb superior court, for $11,212, is a valid judgment, and is such as against the

*Reported by W. B. Hill, Esq., of the Macon bar.

mortgage of Plant & Son. The other points made in the original bill and the amendment are open for determination.

2. The object of the book of complete record, required by section 267, ¶ 6, of the Code of Georgia, for the "record of all proceedings in all civil cases within six months after the final determination thereof," is not notice. Conceding that Plant & Son now have the right to show that the judgment in favor of Gunn, although decided to be a valid judgment, was not so recorded as to be notice to them, they do not prove the fact by the mere proof that the judgment was not recorded in such book. Evidence of the custom and usage of members, of the bar, the officers of court, and the public generally, was admissible to show what book was kept and used for the purpose of ascertaining what liens by judgment existed, and the extent of such liens. This evidence, taken in connection with section 267 of the Code, which enumerates all the record books which the clerks of the superior court are required to keep in Georgia, and with paragraph 4 of that section, requiring the clerk to keep an execution docket, to enter therein the principal, interest, and costs due on each execution issued on judgments in the court, (no judgment docket being required,) makes it perfectly clear that this docket, and not the book of complete record, is the one intended by the law of Georgia to give notice of judgments. It can hardly be supposed that the book of complete record, if designed or used for so important a purpose as the ascertainment of judgment liens, would have been suffered to fall into disuse and have been abandoned since 1856.

3. The amended judgment for interest, at the April term, 1871, of Bibb superior court, related back to the original judgment in 1866, at the November term, so as to constitute a valid lien for the interest as well as the principal from the date of the original judgment. Clearly, this is true as between the parties. The question made is whether this amendment can affect Plant & Son, who took an intermediate mortgage. The execution docket of the November term, 1866, shows that an execution was issued by the clerk for the principal

and interest due. This would, at least, be sufficient to have put Plant & Son on inquiry; and if they had followed it up, they would have found in the files of the office a judgment entered up for the principal and for interest to a blank date, although the figures or amounts were not inserted in the blanks left for the interest or the date. But, on the same paper and immediately above it, he would have found the verdict, (entered also on the declaration,) and the verdict is as certain as it can well be, for the principal, "with interest from the fourteenth day of April, 1860." Amendments authorized by the record can always be made, as a matter of course. The record imports verity, and the court can control its proceedings so as to make one portion of a record in which there is a clerical error, or an immaterial omission, conform to another part of it, which supplies the omission or remedies the defect. Plant & Son must be held chargeable with notice of the legal right of Gunn to have the blank in the judgment filled so as to contain the interest carried by the verdict. The decision, therefore, must be that the judgment, as construed by the verdict on which it was based, and by the other portions of the record, was a judgment from its date, both for principal and interest.

The only cases cited by counsel for the complainants, in in opposition to the effect given by this ruling to the amended judgment, are cases where the right of amendment was not allowed, after a long lapse of time, to affect the equities of *bona fide* purchasers who paid a valuable consideration for property held·by them. Plant & Son are not within this rule. They extended no credit—they invested no money—on the faith of the form in which the Gunn judgment stood. They took their mortgage to secure an antecedent debt, and they cannot be allowed to intervene between the original judgment and amended judgment of another creditor, so as to cut off the rights of the creditor in the amended judgment, where the original judgment, with the record, carried notice of the rights of the creditor to have the amended judgment.

Complainant's counsel asked that the court would make a

decree subrogating the Plant mortgage to the residue of the fund after payment of the judgment in favor of Gunn. But as this ruling gives the judgment a lien for principal and interest from the date of the original verdict and judgment, (the judgment bearing interest as a secured debt,) and as this will absorb the whole fund, this decree is refused; especially as it does not appear that the mortgage would have any priority of lien except on the proceeds of the sale of the mortgaged property.

4. The doctrine of election of two funds does not apply except where both are equally accessible to the creditor. The creditor having the senior lien cannot be forced by one having a junior lien to resort to a fund which is only partially collected, and the balance of which is merely in the form of promissory notes of purchasers of land, the notes being due on long time.

Upon these grounds the decree of the court is that the complainants' bill be dismissed at their cost.

ERSKINE, J., concurred.